Staples, J.,
delivered the opinion of the court.
In the year 1838 John Alexander qualified as committee of Robert H. Crigler, an insane person. As such committee he took possession of the estate of the lunatic, consisting of a small tract of land and a few *676 slaves. He continued in the discharge of the duties of his trust until his death, in January, 1875, without having, however, settled his accounts during all that time. The object of the present bill is to obtain such settlement, and a decree for wrhat is due by the intestate. There is no controversy with respect to the funds which came into the hands of Alexander, or the manner in which his disbursements were made, with the exception of a few inconsiderable items, to be hereafter noticed. The matter of contention relates to the compensation to be allowed Alexander for his services.
The learned judge of the circuit court was of opinion that the intestate was entitled to his commissions on receipts from the year 1839 to the year 1850, inclusive, and from January, 1861, to January, 1866, inclusive. There is no difficulty with respect to the right to a commission for the last-named period—between 1861 and 1866—under the decisions of this court in Strother v. Hull, 23 Gratt. 652, 671, 673, and in Moses v. Hart, adm’r, 25 Gratt. 795, 804.
The question is, as to the commissions for the period between 1839 and 1850. It is conceded, that as the law then stood, the intestate liad forfeited all claim to compensation by his failure to settle his accounts. JBut it is insisted, that under the act of March 3, 1867, the court is invested with a discretion in allowing such compensation for past or future services, and this discretion was properly exercised in the present instance in behalf of the estate of the intestate.
The first point to be considered is, whether the act of March 3,1867, is retrospective in its operation; for upon that supposition only can the decree of the circuit court be sustained. It is hardly necessary at this late day to enter into a discussion of the principles governing the courts in determining whether a statute be or be not retrospective in its operation. Those *677 principles are fully considered and the decisions cited in Potter’s Dwarris on Statutes 162; in Sedgwick on the Construction of Statutes 162-164; and in the cases of Town of Danville v. Pace, 25 Gratt. 1; 31 Gratt. 114.
The general principle deduced from these author!ties is, “that no statute is to have a retrospect beyond the time of its commencement;” and this principle is one of such obvious convenience and justice that it must always be adhered to unless in cases where there is something on the face of the statute putting it beyond doubt that the legislature meant it to operate retrospectively. And although the words of the statute may be broad enough in their literal extent to comprehend existing cases, they must yet be construed as applicable only to cases that may thereafter arise unless a contrary intention is unequivocally expressed therein. Dwarris’ Notes, p. 162.
The Town of Danville v. Pace, was decided in strict conformity with these rules of interpretation. There the words of the statute were not only sufficiently broad, but by inevitable intendment applied to past transactions. And this view was strengthened by the fact that our statute was a literal transcript of a Yew York statute, which had been construed as retrospective, by the highest courts of that State. ' The reasonable inference was, that the legislature of this State in adopting the Yew York statute without change or modification, intended it should be construed in like manner as the Yew York statute.
"We now come to the act of March 3d, 1867. It declares that any such fiduciary who shall wholly fail to lay before such commissioner a statement of receipts, for any year within six months after its expiration, shall have no compensation whatever for his services, during said year, unless allowed by the court. Acts 1866-7, p. 704. The words unless allowed by the court, *678 constitute the amendment. The other words are the old law re-enacted.
How whether such a re-enactment is to be regarded ag a repeai 0f the former statute, and the section thus amended, as an entirely new statute, or whether as in Price’s ex’or v. Harrison’s ex’or, 31 Gratt. 114, the old law is not to be regarded as repealed, but as the law all along, and the changed portions are not to be taken as a part of the law, prior to the passage of the amendment act, the result is precisely the same. The language is, “ Any such fiduciary who shall so fail.” These words apply exclusively to future cases. It is impossible to give them a retrospective effect without doing violence to the language employed. TIad it been the purpose to provide for past delinquences, the phrase would have been any such fiduciary who shall have failed, or words of like import. It has been said, however, that the loss of commissions consequent upon a failure to settle the fiduciary accounts, is in the nature of a forfeiture or penalty, against which it is not only competent for the legislature to relieve, but it may be fairly presumed that such was the intention. How if the fiduciary was the only person, affected by the forfeiture there would be no sort of difficulty in relieving him. But he is not the only person affected; all persons interested in the estate are directly concerned. The effect of giving a retroactive construction to the statute, is to compel these persons to pay what under the then existing laws, they were not bound to pay. It is substantially a new law, creating new rights, and imposing new obligations. It is very true that the statute of 1819 speaks of the loss of compensation as a forfeiture, but in the revision of 1849, these terms were deliberately omitted; probably because they were inappropriate, and calculated to produce erroneous impressions.
*679 In Woods v. Garnett, 6 Leigh 206, Judge Tucker has demonstrated that the loss of commissions by reason of 'a failure to settle the accounts is in no just sense forfeiture or penalty; but a mere matter of statutory regulation; because as the fiduciary derives his right from the statute, he must comply with the terms prescribed by the statute before he is entitled to such compensation. There can be no such thing as a forfeiture where the fiduciary has failed to earn the commissions by complying with the provisions of the law under which he acts. See also 2 Perry on Trusts, § 994; Leading Cases in Equity, Part I., Vol. II., 514, 538.
The several statutes requiring the settlement of fiduciary accounts have been in force fifty or sixty years, probably longer. Although during this time they have been rigorously enforced by the courts, no effort has been made to repeal or modify them. They have always been regarded with great favor, as founded upon the soundest consideration of public policy. They furnish the best and probably the only security for the rights of infants, insane persons, and others whose estates are to be administered by trustees. And experience has demonstrated the only effectual mode of enforcing these provisions is to deprive the fiduciary of all compensation as a necessary consequence of his failure to comply with the statute. Neither the legislature at the revisal of 1849, nor any other legislature down to 1861 ever thought of relaxing them, or of giving authority to the courts to do so. When therefore the legislature of 1867 adopted the amendment in question, it could not have intended to go back and open accounts and transactions anterior to the war, or authorize the courts to do so. No such legislation was required by public or private considerations, or even desired by any one.
*680 It is equally clear, it is not the object of the act of March 3, 1867, to relieve those fiduciaries who had failed to settle their accounts between 1861 and 1867. That object was fully accomplished and the commissions saved by other statutes, as was held by this court in Strother v. Hull, and other cases. What then was the design of the amendment of March 3, 1867?
At that time, everything connected with our political and civil status was involved in uncertainty and doubt. Although the government was in the hands of State officials, it was impossible to say how soon all of them would be displaced, and military appointees substituted in their place. In many of the counties of the State the offices were not filled at all, or were filled in many instances by incompetent persons; competent commissioners could not always be found to settle the accounts of the numerous fiduciaries throughout the State. In many cases the fiduciaries themselves had changed their places of residence, or their vouchers and papers were lost, or misplaced by the accidents of war. The legislature foreseeing that they would encounter difficulties in settling their accounts, wisely adopted a provision submitting the question of compensation to the sound discretion of the courts. The provision looked only to the future and was intended to meet future emergencies.-
If, however, it be retrospective in its operation, then the decisions in Strother v. Hull, and Moses v. Hart, were clearly erroneous. For under those decisions the fiduciary was unfler the enabling act of March 3,1866, enti-. tied to his commission between 1861 and 1866, although he had not settled his accounts during that period, and no court could take them from him. Whereas under the act of March 3, 1867, the fiduciary is entitled to no compensation unless allowed by the court. Here then we have a direct conflict between two statutes opera *681 ting during the period. For under one, the fiduciary received his compensation even without the consent of the court. Under the other he is not entitled to pensation unless allowed hv the court. Such is the t J inevitable result of giving to the act of March 3,1867, a retrospective operation. These considerations satisfy us this could not have been the intention of the legis- * O lature, and the circuit court therefore erred in allowing a commission to the estate of the committee between 1839 and 1850.
For some reason, not disclosed by the record, the circuit judge did not pass upon the question of commission from 1866 to 1876. That question therefore is not properly before us for adjudication. As the case must go hack upon other grounds, the subject matter of these commissions can then he settled by the circuit court.
The next question is, whether in stating and settling the accounts of the intestate as committee, he is to be charged with compound interest upon the balance in his hands. It is insisted this ought to be done, by analogy to the rule governing in the settlement of guardians’ accounts. It is sufficient to say, that the liability of guardians for compound interest grows out of the peculiar provisions of our statutes on that subject. See Code 1873, § 10, ch. 124, and Garrett v. Carr, 1 Rob. R. 196.
These provisions have never been considered as applying to other trustees.
The accounts of the committee of an insane person are to he settled upon principles governing in the settlement of accounts of other fiduciaries having the control of trust funds. They are not chargeable with compound interest, except under very peculiar circumstances. Where there is an express trust for accumulating, and the trustee, instead of investing, retains *682 the funds in his own hands, ’or where he employs the money in his own business, and refuses to account for the profits, he may he charged with compound interest as a punishment, or as a measure of damages for undiscovered profits. See 1 Perry on Trusts, § 470-474; Barney v. Saunders, 16 How. U. S. R. 535; Hill on Trustees, 571, note.
Much of the reasoning of Judge Allen in Garrett v. Carr will apply as well to committees of insane persons as to guardians, and would seem to indicate that in some instances all classes of trustees, except executors and administrators, may he chargeable with compound interest, even upon a mere failure to invest. See page 215.
All that can be said therefore is, that no inflexible rule can be laid down on the subject which would apply to all cases. Generally, however, it is conceded that a trustee and other fiduciaries, except a guardian, are liable for simple interest only. This doctrine seems to be settled by a great variety of authorities, both English and American. 1 Perry on Trusts, § 470-474; Barney v. Saunders, 16 How. U. S. R. 535; Hill on Trustees, 571, note.
There is nothing in the case before us, to take it out of the operation of these general rules. The unexpended balances in the hands of the intestate were generally small sums, mainly the proceeds of negro hire, and the rent of lands retained by him. If these funds were punctually collected by the intestate, it does not appear that they were used in his own business, or that he derived any profit therefrom. It was a case of mere neglect to invest the money, for which the intestate is chargeable only with simple interest.
We are therefore of opinion that the circuit court did not err in directing the account of the intestate as *683 committee, to Tpe settled upon the basis of simple interest.
This disposes of all the matters in except the question of allowances made by the commissioner, to the estate of the intestate for the board of certain slaves belonging to the estate of the lunatic. These allowances appear to be in some instances extremely liberal, if not extravagant. They are, however, approved both by the commissioner and the learned judge of the circuit court. The amounts involved are small, and under all the circumstances, we are not disposed to disturb the decree in these particulars. It must, however, be reversed upon the grounds already mentioned, and the case remanded for further proceedings in conformity with the views herein expressed.
The decree was as follow s:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court did not err in holding that the estate of John Alexander is properly chargeable with simple interest only in the settlement of his accounts as committee of Eobert E. Crigler, lunatic.
The court is further of opinion that the said circuit court did err in allowing the estate of said Alexander commissions upon his receipts between 1839 and 1850, inclusive, the said Alexander having forfeited all claim to compensation by his failure to settle his accounts during that period; and the act of March 3, 1867, in the opinion of this court, having no application to the case.
*684 And this court, not deeming it proper to pass upon any other questions not decided by the circuit court, doth decree and order that for the error aforesaid the said decree of the 16th of November, 1877, be reversed and annulled, and that the appellant recover against the appellee, out of the assets of his testator in his hands to be administered, Ms costs by Mm expended in the prosecution of the appeal aforesaid here.
All of which is ordered, to be certified to the said circuit court of Clarke county.
Decree reversed.