## CORRECTIONS OF TAX DUPLICATE BY COUNTY AUDITOR.

Common Pleas Court of Hamilton County.

THE CINCINNATI, NEWPORT & COVINGTON RAILWAY COMPANY V.
ROBERT E. EDMONDSON, AUDITOR OF HAMILTON COUNTY,
AND WILLIAM A. HOPKINS, TREASURER OF
HAMILTON COUNTY.

Decided, October 16, 1912.

*Taxation—Construction of Tax Commission Act—With Reference to
Corrections of Duplicate Made by County Auditor—Act Operates
Prospectively Only—Auditors Were Not Deprived of Authority to
Make Corrections in Duplicate of 1911.*

Giving to the act creating the Tax Commission of Ohio the prospective
effect required by the rules of construction, it follows that the
power with which the commission was clothed operated only upon
returns made to it, and a correction of his duplicate made by a
county auditor before the close of 1910 was not affected by this
act, and was a legally authorized correction of the duplicate.

*Maxwell & Ramsey* and *Ernst, Cassatt & Cottle,* for the street
railway company.

*Pogue, Campbell & Groom,* for the county officials.

CUSHING, J.

This action is brought by the Cincinnati, Newport & Coving-
ton Railway Company to enjoin the auditor and treasurer of
Hamilton county from levying and proceeding to collect cer-
tain taxes which the defendants claim are due and owing from
the plaintiff to Hamilton county, and which at the time of the
issuing of the temporary order herein the defendants were pro-
ceeding to enforce and collect.

The record presents a number of questions: first, that suffi-
cient notice was not given plaintiff of the auditor's intention to
correct, by making additions to the tax duplicate; second, that
the plaintiff had secured a temporary restraining order against

the auditor, restraining him from placing said taxes on the duplicate, and that the duplicate was corrected in violation of the injunction; third, that the assessment was made by the prosecuting attorney and not by the auditor; fourth, that there was not sufficient evidence of the value of the property before the auditor at the time of making the corrections of the duplicate; and fifth, that the auditor was without jurisdiction to correct the tax duplicate of Hamilton county, and that the power to make such correction or addition to the tax duplicate of Hamilton county was vested in the Tax Commission of Ohio after July 1, 1910, it being admitted that the addition in question was made December 31st, 1910.

The contention of plaintiff as to notice; that the prosecuting attorney made the assessment, and that the auditor did not have sufficient evidence of the value of the property at the time of making the correction on the duplicate, is not sustained by the evidence; therefore, the plaintiff's contention must fail on the grounds stated.

As to the contention of counsel for plaintiff that the auditor made the correction in his duplicate in violation of an injunction, it seems to me on the most obvious principles of law that this contention must fail.

The court prior to twelve o'clock noon of the day on which the correction was made, set aside its temporary order theretofore granted, and in so doing held that it had incorrectly made the order. The testimony on the trial of this case disclosed that the temporary order was set aside by the court some time between seven and fifteen minutes prior to twelve o'clock of that day; also, that a clerk in the auditor's office under instructions from the auditor, had possibly five to ten minutes prior to that time, placed the assessments on the tax duplicate.

If the order was wrongfully obtained, as the court found it was, the plaintiff can not take advantage of its own wrong in securing a temporary order and afterward seeking to hold as void any act done in violation of that order. This principle, it seems to me, is so well settled that it is not necessary to discuss it or cite authorities.

A determination of the points stated leaves for consideration the question. of the jurisdiction of the auditor to make the additions to the plaintiff's taxes that were made by him on December 31st, 1910.

On May 10, 1910, the Legislature of Ohio passed the Tax Commission Act (101 Ohio Laws, 399), by which certain powers theretofore exercised by county auditors were transferred to and vested in the Tax Commission of Ohio.

The sections of the act now under consideration are Sections 72, 73, 74, 76, 115 and 123 (sections read).

The said act took effect July 1st, 1910. The commission was appointed and qualified June 27, 1910. And, as stated, the additions in question were made December 31st, 1910. The question presented is, did the auditor have authority to make the additions to the tax duplicate in Hamilton county for the years in question on the 31st day of December, 1910, or was that power vested in the Tax Commission of Ohio? The question presented stated in legal phraseology is, did the Legislature by enacting the Tax Commission Act, intend that the Tax Commission should act retrospectively and prospectively, or prospectively only? With reference to express, telegraph and telephone companies the powers granted to boards of county auditors and to other boards was expressly repealed, and there can be no question but that all matters of taxes theretofore vested in such boards was by the act transferred to said Tax Commission; also that their records were transferred at the organization of the board on June 27, 1910, and turned over to the Tax Commission.

It is well settled by the courts of this country that statutes shall be construed as having prospective effect only, unless it clearly appears from the statute itself that it was the intention of the Legislature that they should act retrospectively.

In this case it is contended that the language of the statute giving the commission all the powers theretofore exercised by county auditors, meant that they should have those powers from the first day of July, 1910, and therefore the auditors of the several counties were deprived of making additions to or correc-

tions of their duplicates with reference to public utility corporations. This language, according to the plaintiff, should be given a retrospective effect; that is, because the commission was vested with powers theretofore exercised by county auditors it means that that power should be exercised over the records of county auditors that were in existence prior to July 1, 1910. This, it seems to me, would be reading into the law something that is not therein expressed. Courts have no power in construing a statute to read into or take from the law a syllable, word, sentence or clause. They must construe the language used by the Legislature.

If the law is given prospective effect only, the construction then would be that after the commission had made a record of public utility companies for taxation, that the commission would have the same powers that had theretofore been exercised by county auditors in correcting its record or making additions thereto.

That part of Section 74 of the act giving the commission the power possessed by county auditors must be read in connection with the entire section. The first part of Section 74 provides for "Notice of Assessment." The second part defines the "Power of the Commission" as follows:

"After the assessment of the property of any such public utility for taxation by the commission, and before the confiscation by it of the apportioned value to the county, or to the several counties as herein provided, the commission may, on the application of any such public utility or any person interested therein, or on its own motion, correct the assessment or valuation of its property, in such manner as will in its judgment, make the valuation thereof just and equal. The commission shall have and may exercise all the powers possessed by county auditors under Sections 5390, etc., * * * and all such public utilities shall be subject to all the provisions and penalties of said sections."

The construction of this section, for which plaintiff contends, is that the sentence, "The commission shall have and may exercise all the powers possessed by county auditors," etc., vests in

the commission the power to make corrections of county audi-
tors' duplicates after July 1st, 1910, and that such auditors
were by the act divested of any power over their records for
the years in question.  This sentence should be read in connec-
tion with the preceding sentence on the same branch of the
subject, viz.:  "After the assessment of the property of any
such public utility for taxation by the commission," etc.

The rule of construction is that, "the language of a statute
is its most natural expositor, and where its language is sus-
ceptible of a reasonable interpretation, it is not to be controlled by
any extraneous considerations.

It would seem, therefore, that the legislative intent was that
after the commission had assessed a public utility for taxation
it should have and could exercise all the power, in case of its
own records, possessed by county auditors.  This construction
renders the language of the entire section clear, definite and
consistent.

It is further contended by counsel for plaintiff that the follow-
ing sentence from Section 115 of the act controls Section 74,
and divests county auditors of all power over their own records
after July 1st, 1910:

Section 115.  "All powers, duties and privileges imposed and
conferred upon any state board, which board is by this act
abolished of its powers and duties in whole or in part con-
ferred upon this commission, or any power or duty which has
heretofore been conferred upon any state or county officer or
board, which power and duty is hereby conferred upon the
commission, is hereby imposed and conferred upon the commis-
sion created by this act; provided, that the powers and duties
so transferred by this act shall continue to be exercised under
existing laws until such time as the commission hereby created
has been appointed and qualified."  *   *   *

It is clear that Section 74 limits the power of the commis-
sion to a correction of its own records and does not confer any
authority on the commission to make corrections in or additions
to the records of the various county auditors in the state prior
to January, 1911.  Section 115 does not confer any power on

the commission. The most that could be claimed for the section is that it divests boards and state and county officers of a power theretofore exercised by them. If this construction is given Section 115, there would be a gap of six months wherein no board, officer or commission would have power over matters of taxation in connection with public utilities. The Legislature will be presumed to have enacted laws for the public good. Such would not be the case if the contention of plaintiff is the law. If my view of the law is correct, viz.: that the grant of power is limited by Section 74 to a correction of the commission's records, and their records could not be made until after January 1st, 1911, then Section 115 must be held to apply to the making and correcting of records by the commission, and it does not divest county auditors of their power to correct, or make additions to records made by them prior to the appointment and qualification of the said Tax Commission. This view seems to be strenghtened by the language of Section 123:

"This act shall in no manner affect existing causes of action or pending actions, proceedings or prosecutions."

If Sections 74 and 115 are inconsistent, as they evidently are, Section 74 must prevail over Section 115.

"Where the first clause of a section of an act of the Legislature conforms to the obvious policy and intent of the legislators, as elsewhere indicated in the act, it is not rendered inoperative and void by a later inconsistent clause which does not conform to this policy and intent. In such cases the latter clause is nugatory and must be disregarded." *McCormick* v. *Village of Duluth*, 47 Minn., 272.

If the proper return for taxes was not made by the plaintiff for the years claimed, there existed a cause of action against the plaintiff. The statute is specific as to existing causes of action.

The Supreme Court of Illinois, in passing upon the question of statutes having a retrospective effect or retroactive operation in a case where the law was changed with reference to judgments affecting real estate, say:

"There is nothing in either of said statutes indicating they were intended to have a retrospective operation, or were to apply to judgments which had already become liens upon real estate under prior laws. The language all refers to the future. Retrospective laws are not looked upon with favor. Statutes are usually construed as operating on cases which come into existence after the statutes are passed, unless a retrospective effect is clearly intended." (Citing cases.) "In the latter case it was said that, 'although the words of the statute are broad enough. in their literal extent, to comprehend existing cases, they must yet be construed as applicable only to cases that may thereafter arise unless a contrary intention is unequivocally expressed therein.'

"So it may be said in reference to the act of May 26, 1897, that there is nothing in its language indicating that it was to have a retrospective operation, and prevent actions on contracts previously made, or for the enforcement and protection of vested rights. The terms of the act, construed in accordance with the rules of construction above announced, apply to the future, and not to the past." *Richardson* v. *U. S. Mortgage Co.*, 194 Ill., 268.

In the case of *Jiminson* v. *Adams County*, 130 Ill., 560, facts stated at page 563, the court say:

"It is a general rule that a statute will be construed to be prospective, and not retroactive in its operation, unless it clearly appears that the Legislature intended it to have a retrospective effect. In the absence of a clear manifestation of such legislative intent, statutes will be construed as not to prejudice or affect past transactions." (Citing *Thompson* v. *Alexander*, 11 Ill., 54; *Conway* v. *Cable et al*, 37 *id.*, 82; *Knight* v. *Begole*, 56 *id.*, 122; *In re Tuller*, 79 *id.*, 99.)

The Supreme Court of Virginia, in passing upon the same question, say:

"The principle of the law is well settled, that, 'although the words of a statute are broad enough in their literal extent to comprehend existing cases, they must be construed as applicable only to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein.'" *Campbell* v. *Nonpariel Co.*, 75 Va., 298.

The same court in another case uses this language:

"The general principle deduced from these authorities is, 'that no statute is to have a retrospect beyond the time of its commencement; and this principle is of such obvious convenience and justice that it must always be adhered to unless in cases where there is something on the face of the statute putting it beyond doubt that the Legislature meant it to operate retrospectively. And although the words of the statute may be broad enough in their literal extent to comprehend existing cases they must yet be construed as applicable only to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein.'" *Crigler's Comm'e v. Alexander's Ex'r.,* 74 Va., 677.

The same question was considered by the Supreme Court of Mississippi:

"It is not sufficient that certain words of the statutes may justify the application of the language. The language must be imperative; in other words, we must be able to say that it admits of no other construction." *Green* v. *Anderson & H.,* 39 Miss., 363.

The Supreme Court of Minnesota say:

"Laws are not to be construed retrospectively, or to have a retrospective effect, unless it shall clearly appear that it was so intended by the enacting body, and unless such construction is absolutely necessary to give meaning to the language used." *Brown* v. *Hughes,* 89 Minn., 150.

The Supreme Court of Ohio uses this language with reference to acts of this character:

"We are now as we were then, unable to find anything in the act to indicate that the Legislature intended the provisions of the act to become effective at a time other than that declared. The different dates could not have resulted from inadvertance." *State, ex rel,* v. *Roney,* 82 O. S., 376, 382, 383, 384.

I cite without quoting the case of *State, ex rel,* v. *Dircks,* 211 Mo., 596. Numerous other cases have been examined and could

be cited.   They are collected under Sections 642 and 643 of Lewis' Sutherland's Statutory Construction, and are all to the same effect.

The weight of authority therefore is, that a statute is to be construed as having a prospective effect, unless the language clearly and expressly states that it shall have a retrospective effect.

The question then is presented as to whether or not the Legislature intended that the Tax Commission should correct or make additions to the duplicates of the auditors of all the counties of the state after July 1st, 1910, or whether it should have and exercise all the power theretofore exercised by county auditors.

There is no provision in the act requiring the auditors of the various counties to report to the Tax Commission the state of the duplicate for the year 1911 and prior to that time.   The Tax Commission would have no knowledge of such duplicate, and while the commission is given. authority to investigate, the time in which such investigation could be made was so short that it is evident that the Legislature intended that the powers given to the Tax Commission of Ohio should operate only with reference to its own record and only with reference to returns made under the law in question.

The duplicate of the auditor of Hamilton county was made prior to June 27th, 1910, and was of a date prior to the passage of the Tax Commission.

Therefore, the temporary order heretofore granted will be dissolved and plaintiff's petition dismissed at its costs.