EVELETH W. McCORMICK *vs.* VILLAGE OF WEST DULUTH and others.

October 26, 1891.

Constitution—Act for Incorporation of Villages.—An act of the legis-- lature of 1891, entitled "An act relating to villages of over three thou-- sand (3,000) inhabitants, and providing for municipal courts therein," now chapter 146, Laws 1891, is not unconstitutional.

Same—Inconsistent Clauses in Act—Construction — Local-Improve-- ment Bonds.—Where the first clause of a section in an act of the legis-- lature conforms to the obvious policy and intent of the legislators, as elsewhere indicated in the act, it is not rendered inoperative and void by

a later inconsistent clause which does not conform to this policy and intent. In such cases the later clause is nugatory, and must be disregarded.

Appeal by defendants from an order of the district court for St. Louis county, *Ensign*, J., presiding, overruling their demurrer to the complaint in an action to restrain the issue of certain bonds of the village on account of a local improvement.

*H. H. Phelps*, for appellants.

*Cash & Williams*, for respondent.

COLLINS, J. Appeal from an order overruling a demurrer to the complaint in an action brought to restrain and enjoin the individual defendants, officers of the defendant village, containing over 3,000 inhabitants, from issuing or selling or disposing of certain municipal bonds. Two questions are presented for consideration,—one being as to the constitutionality of an act of the legislature entitled "An act relating to villages of over three thousand (3,000) inhabitants, and providing for municipal courts therein," now found as chapter 146, Laws 1891; and the other involving the construction of a portion of section 8 of subchapter 9 of the act, which subchapter is devoted exclusively to the matter of local improvements and special assessments.

1. It is first contended by the plaintiff that the act is in violation of that portion of the fourth article of the constitution which reads as follows: " Sec. 33. The legislature is prohibited from enacting any special or private laws in the following cases: * * * (9) For incorporating any town or village." It has not been claimed that the law in question should have been made so general in its application as to include all villages within the limits of the state, nor has it been urged that the law-makers were without power to properly classify villages, and then to legislate for each distinct class; but the position that this act is contrary to the constitutional provision has been made to depend upon the language used in section 4 of subchapter 2, in respect to the first election. It is there provided that the first election shall be held on the 12th day of May, 1891, and the line of argument is that by reason of this language the act has been confined in its application to such villages as pos-

sessed a population exceeding 3,000 on the day prescribed for the first election,—practically on the day the law took effect,—and that all other villages, no matter what their future growth might be, or what they might attain in the way of population, are excluded from the operation of the statute. It is not incumbent upon us to state what conclusion might be reached on this point if the views of counsel in reference to that portion of section 4 which relates to first elections, were adopted, for we are clearly of the opinion that the law is general in its terms, and that any village, on obtaining the specified number of inhabitants, may readily proceed to avail itself of all the powers and privileges conferred by chapter 146. By the terms of the first section, "any village in this state having a population of over three thousand (3,000) shall have the powers generally possessed by municipal corporations at common law, and, in addition thereto, shall possess the powers hereinafter specifically granted, and shall have perpetual succession." Provision is made in subchapter 2 for general elections, to be held annually on the second Tuesday of March, and also for special elections for any proper purpose. For all general elections the village council is directed to designate three inspectors and two clerks for each election precinct. There is a similar direction in respect to the "first" election; the only difference being that for such occasion the inspectors and clerks are to be designated by the council 10 days at least, while for general elections this designation is to be made 30 days at least, prior to election day. There may be language used in the act somewhat opposed to what appears to us to have been the legislative intent, and there may be defects in some of its provisions, but it is our duty to give effect to the enactment according to its intention, and to place such a construction upon it as will reconcile it to the fundamental law of the state, if within our power. "It would be a palpable violation of judicial duty and propriety to seek in a statute a construction in conflict with the constitution or with the object of its enactment, or to admit such a construction where the statute is fairly susceptible of another in accordance with the constitution and the legislative intention." Taking the law as an entirety, we see no more difficulty in giving it application to such

villages as may, with respect to population, hereafter come within its terms, than would have arisen if all reference to a first election had been omitted.   Had there been no provision at all on this subject, no serious difficulty would have been manifest in proceeding under the law to a complete organization.   The power of the legislature to pass this act, placing upon it the construction we have indicated, was settled in *Nichols* v. *Walter*, 37 Minn. 264, (33 N. W. Rep. 800;) *State* v. *Spaude*, 37 Minn. 322, (34 N. W. Rep. 164.)

2. Having disposed of the first question before mentioned adversely to plaintiff's views, we have now to discuss the second, presented by the appeal.   By the terms of section 8 of subchapter 9— devoted wholly to the subject of local improvements and special assessments as before stated—it is provided: "Sec. 8. After the expiration of said thirty (30) days, the council shall issue improvement bonds, covering all the assessments except such as the owners shall have already paid, as provided in the preceding section.   Such bonds shall be signed by the president and recorder, be sealed with the corporate seal of the village, and contain such recitals as may be necessary to show for the payment of which improvement they were issued, and the number and amounts of such bonds.   Said bonds shall be semi-annual interest coupon bonds, divided into five (5) equal series, payable, respectively, in one, (1,) two, (2,) three, (3,) four, (4,) and five (5) years from date, and shall draw interest at a rate not exceeding seven (7) per cent. per annum, payable semi-annually.   Said bonds shall be semi-annual interest coupon bonds, payable at the option of the village after five (5) years, and absolutely at the expiration of seven (7) years, from their date, and shall draw interest at a rate not exceeding seven (7) per cent. per annum. The village recorder shall carefully prepare a statement of the special assessments on which the bonds are issued, and record the same, together with a copy of said bonds, in his office."

It will be observed that there are in this section two independent and apparently irreconcilable clauses in respect to the character of the so-called "improvement bonds" authorized to be issued.   By the first of these clauses the bonds shall be made payable in five equal

annual instalments, the first maturing one year from the date of the bonds; while by the second clause it is provided that the bonds shall be made payable at the option of the village after five years, and absolutely at the expiration of seven years, from date. The view taken by the municipal authorities, individual defendants in this action, seems to have been that in their discretion the bonds could be issued in conformity with the terms of either clause, and, according to the allegations of the complaint, they were taking steps in the issuance and disposal of bonds which did not mature absolutely for seven years after date, but which might be paid after five years, at the option of the corporation.

In support of this proceeding it was claimed upon the argument that under well-known rules of construction these seemingly repugnant sentences in section 8 might readily be harmonized, and effect given to both, by construing the word "shall," appearing in each, as meaning "may," and, in addition, by connecting the two clauses with the conjunction "or," the result of such construction being in justification of the course actually pursued by the municipal officers. It was also argued that, if this position was not sustainable, and both clauses thus given effect, the last in order—the one under which it was proposed to issue the bonds—must be upheld, and the first disregarded, on the ground that where distinct clauses of a statute are irreconcilable, and one must be declared nugatory, the clause or provision last in order must be taken as expressive of the legislative will, and is to govern. The rules of construction invoked by defendants' counsel in support of their demurrer are well recognized, but the true rule to be applied here is that, where the first clause of a section conforms to the obvious policy and intent of the legislature, it is not rendered inoperative by a later inconsistent clause, which does not conform to this policy and intent. In such cases the later clause is nugatory, and must be disregarded. This rule is recognized in substantially the same language in *Dickerson* v. *Nelson*, 4 Ind. 280; *State* v. *Williams*, 8 Ind. 191; *Kansas Pacific Ry. Co.* v. *Commissioners*, 16 Kan. 587; *Sams* v. *King*, 18 Fla. 557. And see End. Interp. St. §. 183; South. St. Const. § 221.

Possibly these clauses might be reconciled if nothing further appeared in the act bearing upon the subject, or, upon the other hand, be declared wholly inconsistent, both being disregarded, or the last in order held valid; but the policy and intent of the legislature is clearly manifested in the various provisions which follow immediately after those under consideration. The village recorder is required to carefully prepare and record a statement of the special assessments, and each year, after the issuance of the bonds, to certify to the county auditor one-fifth of the amount of the special assessment on each parcel of land covered by the same. The amount so certified is then extended upon the tax-lists, collected as other taxes, and paid over to the village treasurer. This would indicate that it was the intent to have the village meet and discharge one-fifth of the amount of its bonds each year, unless we assume a design to accumulate in its treasury money which would not be needed for from two to seven years; and there are no provisions whatever for the collection of the amount of the assessments at or after the expiration of five years. Finally, in section 16, it is provided that the bonds shall be substantially in a given form. The bonds which it was proposed to issue, as before stated, could not possibly be in the form required, substantially or otherwise. The prescribed form is beyond doubt one designed for bonds payable in five equal and annual instalments.

The demurrer to the complaint was therefore properly overruled.
Order affirmed.