THE STATE, EX REL. MITMAN ET AL., ETC., *v.* THE
BOARD OF COUNTY COMMISSIONERS OF
GREENE COUNTY.

MITMAN ET AL., ETC., *v.* WILLIAMSON ET AL., ETC.

*Statutory construction — Conflicting provisions — Prior and later enactments — Legislative policy and intent control interpretation — Directory acts rendered mandatory — By substituting "shall" for "may" — County commissioners — Transfer of surplus in sheep fund — To county board of education — Section 5653, General Code (104 O. L., 145).*

1. The rule of statutory construction that where conflicting provisions are found in an act of the general assembly the later in position repeals the earlier, is not to be arbitrarily employed, and when its exercise operates to defeat the manifest intent of the legislature, it should never be resorted to.

2. In matters of public or great general interest, where such conflicting provisions are not to be reconciled, the court should seek such construction as will make the act enforceable, and in doing so will be governed by the manifest purpose and obvious policy and intent of the general assembly to be gathered from the whole act; and where the earlier clause of a section conforms to such policy and intent, it is not rendered inoperative by a later inconsistent clause, out of harmony with the policy and intent. The later clause must be held nugatory and therefore disregarded.

3. When a section of an existing law is amended by the general assembly by striking out therefrom "may" and inserting in lieu thereof "shall," a clear intent is manifested to thereby alter the directory nature of the law and render it mandatory.

4. Under the provisions of Section 5653, General Code, as amended 104 Ohio Laws, page 145, in counties where there is no society for the prevention of cruelty to children and animals, incorporated and organized as provided by law, it is the mandatory duty of the county commissioners to transfer the surplus in the sheep fund in excess of one thousand dollars to the county board of education fund.

(Nos. 15059 and 15060 — Decided April 11, 1916.)

ERROR to the Court of Appeals of Greene county.

Both of the above-entitled cases were admitted to the supreme court on *certiorari* from the court of appeals of Greene county, as being cases of public interest.

No. 15060 is an action commenced in the common pleas court of Greene county, under favor of Sections 2296 to 2300, General Code, wherein R. D. Williamson and others, as board of county commissioners, asked authority from such court to transfer to the blind relief fund a balance of $1,300, the surplus in the sheep fund of the county after retaining the sum of $1,000, as provided for by Section 5653, General Code. On June 5, 1915, by order and decree of such court, the commissioners were authorized to make the transfer.

On September 18, 1915, O. P. Mitman and others, as the county board of education, brought an action in the same court, being cause No. 15059 in this court, against the county commissioners asking for a writ of mandamus against the board to compel them to transfer such surplus to the county board of education, basing the right to such action on the provisions of Section 5653, General Code, as amended in 104 Ohio Laws, pages 133, 145.

The county commissioners answering, admitted the existence of the surplus, and as a defense plead the judgment of June 5, 1915, hereinbefore set forth, directing the transfer of the surplus to the blind relief fund.

The county board of education demurred to the answer; the demurrer was overruled, and plaintiff not desiring to plead further the petition in mandamus was ordered dismissed.

Meanwhile the county board of education moved the court, in the case wherein the board of commissioners sought authority to transfer the surplus to the blind relief fund, to vacate and set aside such judgment, on the ground that the court had no jurisdiction to transfer the fund to the blind relief fund, or if it had jurisdiction of the proceedings, it ought, in the interest of a proper and legal administration of the public funds, vacate and set aside the judgment as inadvertently made and entered. This motion was overruled and leave to the board of education to file objections was denied.

On error and appeal, respectively, the court of appeals found in favor of the board of commissioners in both cases, and rendered judgments accordingly.

*Mr. M. J. Hartley,* for the county board of education, plaintiffs in error.

*Mr. F. L. Johnson,* prosecuting attorney, for the board of county commissioners, defendants in error.

NICHOLS, C. J. The sole question involved in both cases is whether the last paragraph of Section 5653, General Code, amended as above stated, is mandatory on the board of county commissioners.

If it is, then the common pleas court, in its judgment of June 5, 1915, directing the transfer of this surplus to the blind relief fund, rendered an erroneous judgment and the motion of the county board of education to vacate and set aside the same should have been sustained, and likewise the application for a peremptory writ of mandamus should have been granted.

If this amended paragraph is to be construed as directory merely and as vesting a discretion in the board of commissioners, then the judgments below in both cases and in both courts are correct.

Before the amendment under consideration was adopted, the paragraph read: "Any surplus not so transferred may be transferred to the school fund, the poor fund, or the road and bridge fund at the direction of the county commissioners." The amendment struck out "may" and substituted "shall." In the same paragraph the words "the school fund, the poor fund, or the road and bridge fund" were stricken from the act and in their stead were inserted the words "the county board of education fund."

Section 5653 as an entirety has to do with the disposition of any surplus remaining in the special fund created by the tax on dogs, to be used for the payment of sheep claims.

The amendment in question, while substituting the imperative for the permissive, and while withdrawing the four specially mentioned county funds and limiting the application of the surplus to the one fund, still retained in the paragraph in ques-

tion and at the end thereof the words "at the direction of the county commissioners."

The retention of this clause in the paragraph gives rise to the controversy. The defendants in error's position is that this language in the act vests a discretion in the board and permits it to avail itself of the privileges of Sections 2296 to 2300, General Code, relative to the transfer of funds.

The plaintiffs in error maintain that this language is in obvious conflict with that part of the paragraph which precedes it, and that it is the duty of the court to interpret the paragraph with the view of ascertaining and giving effect to the manifest intention of the legislature. The plaintiffs in error further maintain that such interpretation will lead with certainty to the conclusion that it was the manifest purpose of the general assembly to vest no discretion in the board, but to provide virtually for an automatic transfer of the surplus to the newly created fund to be known as the county board of education fund.

That a conflict does exist is conceded on all hands and a construction of the statute is necessary. All authorities agree that where words conflict with each other, where the different clauses of the instrument bear upon each other, where clauses are out of harmony with other clauses, construction becomes necessary. It is of course not allowable to interpret that which has no need of interpretation. There is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean

what it plainly expresses, even if such construction lead to clearly mischievous and absurd results.

It is evident that the conflict we meet with here is one of point-blank repugnancy and it is manifestly difficult to bring the provisions into any sort of harmony by any rule of construction.

It is a rule of statutory construction that in the event of conflict, so that if one provision operates at all it will necessarily antagonize any effect of the other, both are void, but there is an associated rule of construction that when different constructions may be put upon an act, one of which will accomplish the purpose of the legislature and the other render it nugatory, the former should be adopted.

There is another rule of construction, seldom relied on, however, to the effect that where conflicting provisions are found in an act the latest in position repeals the other, being analogous to a somewhat similar rule applicable to the construction of wills. This is a most unsatisfactory rule, and is applied only as a *dernier ressort*. Indeed, as applied to the facts in this case it is qualified, if not rendered quite innocuous, by an associated doctrine to the effect that "when the first clause of a section conforms to the obvious policy and intent of the legislature, it is not rendered inoperative by a later inconsistent clause which does not conform to this policy and intent. In such cases the later clause is nugatory and must be disregarded." This theory of construction is manifestly the sensible one and is supported by au-

thority, the most conspicuous case being that of *McCormick* v. *West Duluth*, 47 Minn., 272.

The desideratum then is to ascertain the policy of the law and the intent of the general assembly in its enactment.

Well-settled and oft-time repeated rules of construction abound in decided cases.

Perhaps no better statement has ever been given the courts on the subject of the interpretation of statutes than that of Kent in volume 1 of his Commentaries on American Law (13 ed.), 461, where he says: "In the exposition of statutes, * * * the intention of the lawgiver * * * will always prevail over the literal sense of terms, * * * and the reason and intention of the lawgiver will control the strict letter of the law. * * * When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and the remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion."

In 2 Lewis' Sutherland on Statutory Construction (2 ed.), Section 471, it is said: "In order to ascertain the purpose or intention, if it is not clearly expressed in a statute, or that such purpose or intention may be carried into effect, the court will take notice of the history of its terms when it was enacted. It is needful in the construction of all instruments to read them in view of the surrounding facts. To understand their purport and intended application, one should, as far as

possible, be placed in a situation to see the subject from the maker's standpoint and study his language with that outlook. *Statutes are no exception.*"

Lord Coke's rule, announced in *The Case of the Marshalsea,* 10 Co. Rep., *73a,* is in effect that the court should ascertain what were the circumstances with reference to which the words of the statute were used, and what was the object appearing from those circumstances which the legislature had in view.

Mr. Justice Miller, in the case of *Gardner* v. *The Collector,* 6 Wall., 499, says, at page 511, that the court may obtain information to aid in construction of a statute from "any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer."

Observing these fundamental rules of interpretation, the instant case presents no difficult matter for determination.

Looking then to the act of which the amended section was a part, we find that it was the new school code of Ohio, passed by the general assembly in its special session of 1914, called by the governor in the main for the consideration of this very act.

We find Section 5653 lifted bodily from Chapter 12, Title I of Part Second, General Code, under the classification of "Levying Taxes," where it logically belonged, and transferred to the chapter of the code having to do with educational matters.

We find that it passed the general assembly February 5, was approved by the governor February 17, and became operative as a law May 17, 1914.

We find that the same act repealed old Section 4744 and reenacted it in such form as to provide for the election of a county school superintendent, who was to be selected for a term not longer than three years, commencing on the first of August, 1914.

We find that supplementary Sections 4744-1, 4744-2 and 4744-3 were enacted at the same time and as part of the same act.

These sections provided that such county superintendent should be paid a salary of not less than $1,200 and that he should be paid out of the *county board of education* fund.

We find that a newly created tax fund was provided for, to be a separate fund and to be known as the *county board of education* fund.

We also find that this amendment expressly struck out the word "may" and inserted in its stead the word "shall."

We find that the four named long-established funds, which under the old section might have been replenished by the surplus from the dog tax, were stricken from the act and substituted therefor was the newly created fund to be known as the county board of education fund, and from which the county superintendent's salary should be paid.

These facts we ascertain from the act itself.

Now, seeking a clear and satisfactory answer to the question, What was the object of amending

Section 5653? and availing ourselves of all sources of information which in their nature are capable of conveying information, we discover that the needful thing to give efficacy to this act was to select competent county superintendents. The law was an innovation; met with many criticisms and vigorous opposition, and a failure to start with effective instruments might prove fatal to its retention on the statutes of Ohio.

It is certainly within the knowledge of all men that school superintendents must be paid, and that promptly. As a general rule school teachers are not overburdened with this world's goods, and the monthly stipend is quite essential.

Looking a little further afield we find no fund available to pay these new officers and none could be made available under our system of collecting and distributing taxes until the February following. Thus nearly six months must ensue before salary could be paid.

Now, putting ourselves in a position to see the subject from the standpoint of the makers of the law, we must gather that they were somewhat at their wits' end to provide a fund to make payments to the superintendents.

It was a clear case of doing the best one could under the circumstances. So, after the law was framed and ready for final submission to the general assembly, we find its sponsors at the last moment seizing on Section 5653, amending it as hereinbefore set forth and incorporating the section in the new school code as its very last section.

It was clearly the intention of the legislature not to leave the county superintendents to the mercy of the county commissioners, who, it might be said, could have given vitality to this new fund by proceeding to imburse it by following the provisions of Section 2296 *et seq.,* General Code. But realizing that since the limitation of the tax rate has been in vogue in Ohio most of the long-established funds are in steady need of reimbursement, the general assembly evidently thought best not to depend on the whim of the county commissioners but to make certain a fund, at least in those counties wherein there was no society for the prevention of cruelty to children and animals, incorporated and organized as provided by law. Thus we arrive at the conclusion that the general assembly had a definite purpose in amending Section 5653.

We are not unmindful of the fact that in construing statutes instances are not few where courts have read "shall" as "may," but we would feel it our duty to avoid thus departing from the primary meaning of these terms under the circumstances surrounding the amendment of this law.

Courts should be slow to impart any other than the natural and commonly understood meaning to terms employed in the framing of our statutes.

*You shall* and *you shall not* should be construed as imposing imperative duties or prohibitions, unless the manifest intention of the legislature suggests a weakened sense of meaning.

If all the *thou shall nots* of Holy Writ were to be censored and reedited as *thou may nots,* prac-

tically all the authority of Scripture would be dissipated. It is not the mere withholding of permission that deters mankind from violating the laws of God but the imperial and authoritative *Thou shall not.*

Where, as in the instant case, the general assembly deliberately amends an existing law by striking out *may* and substituting *shall,* it would be absurd for the court to deliberately give the meaning of *may* to the newly substituted *shall.* It would indeed be a mockery in the way of construction and would be equivalent to a judicial repeal of the amended act and a judicial reenactment of the former law.

Likewise, the withdrawal by the amendment of the four funds, either of which by the direction of the county commissioners, under the old act, could be replenished by them, and the limitation to the newly created county board of education fund, is an element of noteworthy fact that cannot be overlooked.

Thus it is that we arrive at the conclusion that the obvious intent and purpose of this act was to make mandatory the duty of transferring the surplus in the dog tax or sheep fund to the county board of education fund, in counties where the societies for the prevention of cruelty to children and animals have no existence. We give the amended sections this construction notwithstanding the retention in the law of the clause "at the direction of the county commissioners."

Quite naturally the question might be asked, What meaning will the court give this retained

phrase? It is of course a part of the act, and if possible the court should give meaning to every word in every act.

It is not impossible, perhaps, to give a construction to this language that would harmonize with the construction given the entire paragraph, but it would be altogether technical and perhaps hairsplitting.

We prefer to stand on the plain and obvious intent of the legislature as gathered from the entire act and the surrounding circumstances attending its enactment. All the authorities agree that there is no more important factor to be reckoned with in the construction of a law than the cause or necessity of any kind which induced its enactment. It was held in the case of *Ellis County* v. *Thompson,* 95 Texas, 22, at page 31, that "The purpose for which the law was enacted is a matter of prime importance in arriving at a correct interpretation of its terms." The necessity and purpose of amending Section 5653 are plain. We plant our position fairly and squarely on the common-sense authority of *McCormick* v. *West Duluth, supra,* and approve the doctrine therein announced that "where the first clause of a section in an act of the legislature conforms to the obvious policy and intent of the legislators,   *   *   *   it is not rendered inoperative and void by a later inconsistent clause which does not conform to this policy and intent. In such cases the later clause is nugatory, and must be disregarded."

This is no departure from the established law of Ohio, but is in strict conformity to the doctrine

announced by this court in the case of *State, ex rel. Attorney General,* v. *Mulhern, Sheriff,* 74 Ohio St., 363, the first and second propositions of the syllabus being:

"1. In giving construction to a legislative act the position in the order of precedence of the several provisions will be given due consideration, but there is no arbitrary rule which requires that a provision found in the later part of the act shall necessarily be given an effect to repeal conflicting provisions in the earlier part of the act.

"2. Where such conflicting provisions are irreconcilable, the court may, if the subject-matter is of minor interest, hold the whole act to be inoperative. But where the matter is of vital interest, a court will seek such construction as will make the act enforceable, and in doing so will be governed by the apparent purpose and obvious policy and intent of the general assembly, as gathered from the whole act, even though it results in a disregard of the later provision."

Spear, J., in his opinion in this case quotes with approval the doctrine of the case of *McCormick* v. *Village of West Duluth, supra,* and rejects the contrary theory.

While the matters involved in the instant case are not of such commanding importance as those presented in the *Mulhern case,* yet they are more than of minor interest, or at least were at the time of the enactment of the law, as of which time, of course, the construction must be had. And furthermore, these cases, by reason of the fact that

they are being considered at all by this court, are stamped as involving questions of public interest.

The petitions in these cases contain the allegation that there is no society for the prevention of cruelty to children and animals, incorporated and organized as provided by law, and it therefore becomes the mandatory duty of the proper officials of Greene county to transfer the surplus in the sheep fund to the county board of education fund. In counties where such society is incorporated and organized as provided by law, the rule laid down in this case can have no application, for Section 5653 specifically provides that only such surplus as has not been transferred to such societies shall be subject to transfer to the county board of education fund.

Influenced by the views hereinbefore expressed we are led to reverse the judgments in both cases, and they will be remanded for further proceedings according to law.

*Judgments reversed.*

JOHNSON, WANAMAKER, NEWMAN and MATTHIAS, JJ., concur.