Matthias, J.
The relator seeks a writ of mandamus to compel the board of education of the Worthington village school district to admit to the schools of such district the children who are inmates of the Methodist Children’s Home, located within said district, and which is a private institution authorized by its charter to care for such children and train them physically, mentally and spiritually. There are now 84 children of school age therein.
The board of education has refused further admission of such children to the schools of the district, stating in a resolution adopted by it that the facilities for housing pupils of the Worthington schools are now overtaxed, and that it is impossible to obtain sufficient funds to hire additional teachers and pay the expense incident to such enlargement of the schools.
Issue is made by demurrer, and the question thereby presented is whether the admission of children to the public schools of that district, who are inmates of such institution but who are in fact residents of other school districts of the state, is a duty enjoined by law upon the board of education. The decision of this question calls for an examination and consideration of the statutes having to do with the matter of school attendance. The general assembly of the state has dealt with the subject specifically and definitely in Section 7681, General Code, as follows:
“The schools of each district shall be free to all youth between six and twenty-one years of age, who *440 are children, wards or apprentices of actual residents of the district, but the time in the school year at which beginners may enter upon the first year’s work of the elementary schools shall be subject to the rules and regulations of the local boards of education. Inmates of the proper age of county, semi-public and district children’s homes shall be admitted after the manner described in Section 7676. The board of education may admit the inmates of a private children’s home or orphan asylum located in the district, with or without the payment of tuition fees, as may be agreed upon; provided any child who is an inmate of such a home or asylum and previous to admission was a resident of the school district in which such home or asylum is located shall be entitled to free education; and provided, any such inmate who attends the public schools was prior to admission to such home or asylum a resident of another school district of the state of Ohio and a tuition fee is charged, the same method of reimbursement shall be followed as is provided in Sections 7677 and 7678; and provided further, for any such inmate who attends the public schools and who prior to admission to such home or asylum was not a resident of the state of Ohio, such home or asylum shall pay from its own funds such tuition as may be agreed upon. But all youth of school age living apart from their parents or guardians and who work to support themselves by their own labor, shall be entitled to attend school free in the district in which they are employed.”
It is to be observed that the requirement that the schools of a district shall be free to the youth of school age applies only to the children, wards or ap *441 prentices of actual residents of the district. This section then makes provision for the admission of children to the public schools who are inmates of a county, semi-public or district children’s home, and requires that they shall be admitted. This language is clear, explicit and mandatory, leaving no discretion in the board of education with reference to the admission to the schools of the district of children who are inmates of a county, semi-public or district children’s home located therein. The question presented in this case, however, has to do with children in neither of the above classes, but only with children who are inmates of a “private children’s home,” whose parents are not actual residents of the district. That such children are not to be regarded as residents of the district, and therefore entitled to free education therein, seems quite clear from the provisions of the statute to which we have referred.
This court in the case of State, ex rel. The German Protestant Orphans Asylum of Cincinnati, v. Directors of School District No. 14 Millcreek Township, Hamilton Co., 10 Ohio St., 448, in construing a similar statute, which then provided that “Admission to said schools shall be gratuitous to the children, wards, and apprentices of all actual residents in said district,” etc., held that children who were inmates of an orphan’s home are not “ ‘children, wards, or apprentices of actual residents’ in the school district within which said asylum is located, and therefore, * * * not entitled to gratuitous admission to the privileges of the public schools of said district.”
*442 The difference in the language of Section 7681, General Code, with reference to the admission to the public schools of inmates of a county, semi-public or district children’s home and that with reference to the admission of children who are inmates of a private children’s home located in the district is significant. The former is mandatory, the latter permissive, clearly leaving the question as to admission of children from such private home to the discretion of the board of education of such district. As to the former the language is “shall be admitted,” while as to the latter it is “the board of education may admit .” The history of this legislation is convincing, if it be necessary to look thereto for a construction or interpretation of the language employed. The first statute enacted with reference to the admission of inmates of a county or district children’s home (84 O. L., 69) employed the language “at the discretion of the board of education,” etc. Prior thereto there was ho provision, mandatory or otherwise, relative to the subject. No change was made in such legislation in the respect in question until April, 1913 (103 O. L., 897), when it was provided that the schools of a district should be free to the children of school age, residents of the district, including children who were inmates of a county or district children’s home. By force of this amendment the matter of the admission of such children was removed from the discretion of the board of education.' TJp to this time there had been no reference whatever to children who were inmates of a private children’s home. That first appeared in 1915 (106 O. L., 489), at which time it was provided that the schools of each district should *443 be free to the youth of school age who were actual residents of the district, including children who were inmates of a county, or district, or any public or private children’s home located in such district. Hence, while such .legislation was in force, the board of education had no discretion with reference to the admission of children who were inmates of either a county or district or public or private children’s home located within the district. Then came the enactment of the section now under consideration, which makes the admission of the inmates of a county, semi-public or district children’s home located within the district mandatory, as it was theretofore, but in contradistinction thereto again made the admission of children who were Inmates of a private children’s home permissive and discretionary with the board of education of such district. While as to some matters these statutes are not entirely clear, there can be no question from the language used, and especially because of the change from permissive terms to mandatory terms and then back again to permissive language, as to the intent and purpose of the lawmaking body. This purpose and intent seems too clear to require or justify extended discussion. The legislative body has left nothing for the court to construe or interpret. In language that cannot be misunderstood and cannot possibly be tortured into a different meaning by so-called construction or interpretation a statute previously plainly mandatory has been made permissive and discretionary. In applying a fundamental rule of construction this court held in the case of State, ex rel. Mitman, v. Board of County Commissioners of Greene Co., 94 *444 Ohio St., 296, that “When a section of an existing law is amended by the general assembly by striking ont therefrom ‘may’ and inserting in lieu thereof ‘shall/ a clear intent is manifested to thereby alter the directory nature of the law and render it mandatory.” The language of Nichols, O. J., who rendered the opinion, is particularly applicable here: “Where, as in the instant case, the general assembly deliberately amends an existing law by striking out may and substituting shall, it would be absurd for the court to deliberately give the meaning of may to the newly substituted shall. It would indeed be a mockery in the way of construction and would be equivalent to a judicial repeal of the amended act and a judicial re-enactment of the former law.”
In the amended law involved in this action there is more than the mere change of shall to may, for here, in the same section, the legislature deliberately retained the shall as to one class of children’s homes and substituted may for shall as to the other class of children’s homes with which it was dealing. The conclusion which we have reached and announced need not rest upon the presumption of the legislative intent to change the effect and operation of a law by a change in the language thereof (County Board of Education of Hancock Co. v. Boehm, 102 Ohio St., 292), but is required by the clear and express language of the legislature, which leaves no room for doubt as to its meaning or as to the intent and purpose of the legislature in its enactment.
The rule is (2 Sutherland on Statutory Construction [Lewis, 2 ed.], Section 640) that the words *445 “may” and “shall” are to he taken in their ordinary and nsnal sense, unless the sense and intent of the statute require one to be substituted for the other. It would seem absurd to substitute one for the other in the construction of this statute on the theory that such substitution is necessary to carry out the manifest intent and purpose of the legislature, when the legislature has in succeeding sentences in the same section employed the words “shall” and “may” not interchangeably but in contradistinction, and with the evident purpose of making one provision peremptory and mandatory and the other optional and permissive; and such intent is demonstrated almost to a mathematical certainty by the history of the legislation upon the subject above set forth.
Attention is directed to the general provisions of other sections of the statute as to the right and privilege of attending the public schools and the compulsory school attendance provision. But these general provisions cannot control the particular and specific provisions of other sections regulating such attendance, and prescribing the place and conditions thereof; and that is particularly true because the specific provision is the later enactment. It is to be noted that it is not required that children attend the public schools. The provisions of Section 7763, General Code, are that children of specified age shall attend a public, private or parochial school.
The constitution of the state confers upon every citizen of the United States who shall have been a resident of the state one year preceding the election, and of the county, township or ward in which *446 he resides such time as may be provided by law, the right to 'vote at all elections, and yet no one would question the authority of the legislature to regulate elections; and numerous conditions and requirements have been imposed and prescribed, such as a limitation of the hours of voting, the requirement of registration, the method of marking the ballot, etc.
This court has but recently held in the case of Devine v. State, ex rel. Tucker, Jr., ante, 288, that the requirement of the statute that a black lead pencil be used in marking the ballot is mandatory.
The permissive and discretionary character of the provision in question here being clearly manifested by the language employed as well as by the history of such legislation, our conclusion, therefore, falls within the rule announced in the syllabus in the recent case of Devine v. State, ex rel. Tucker, supra. A statement of Wanamaker, J., in the opinion in that case, at page 294, is also pertinent here: “The language of the general assembly being plain and peremptory, there is neither right nor room for the court to construe it. Appeal must be taken to the legislature if a change in the law is needed or demanded.” It is urged that in the amended Section 7681, General Code, “the matter of tuition was the optional thing, not the matter of admission.” Such conclusion can be reached only by holding that the mandatory “shall” in the sentence relative to county, semi-public and district children’s homes is to be regarded as carried forward and understood in the next sentence, which is a separate and distinct sentence and relates to private children’s homes, and that the permissive *447 “may” in that sentence has reference only to the payment of tuition fees. In this section, as it existed prior to the last amendment, the mandatory language repeated a second time expressly included public and private children’s homes. After first providing that the schools of each district shall be free to all youth of the prescribed age who are children, wards or apprentices of actual residents of the district, including children who are inmates of a county or district, or of any public or private children’s home, or orphan’s asylum located in such school district, in the next sentence, as if for emphasis, it is provided that “the board of education of any district in which a public or private children’s home or orphans’ asylum is located * * * shall admit,” etc. In the amended section, which is the statute now in existence, the legislature removed private children’s homes from these mandatory provisions deliberately, and, we think, designedly, for if it had intended that the provision as to private children’s homes should be mandatory there would have been no reason whatever to make any change in that portion of the section; and if in that sentence it had said “shall admit” it would not have said in the very next sentence “may admit.” Surely if the optional “may” refers only to the matter of charging tuition fees, the previous sentence would not have been amended but left as in the prior enactment. Now it is suggested that the court by construction replace private children’s homes in the mandatory provision, and make this provision read “shall admit,” although it in fact reads “may admit.” That is not statutory interpretation; that would be statutory enactment. It *448 would not only be adding something to the legislative enactment, but it would be a reinsertion by the court of the very provision repealed by the legislature.
By Section 2, Article VI of the Constitution, it is provided that the general assembly shall make such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state, and by Section 3, Article VI of the Constitution of the state, power, full and complete, is vested in the legislature to make provision for the organization, administration and control of the public school system of the state, supported by public funds. Pursuant to the authority so vested the legislative branch of the state has enacted the laws to which we have referred, and many others, with a view to making most adequate and satisfactory provision for the efficient education of the youth of the state. With the wisdom or the policy of such legislation the court has no responsibility and no authority. Its duty is limited to the interpretation of such provisions as are not clear, and the carrying into execution of laws enacted which are not in conflict with constitutional provisions. It cannot be contended that any provision of the constitution is violated by the statutes here in question, and we find not only that such statutes do not enjoin upon the-defendants a duty which the relator seeks to enforce, but, on the contrary, clearly warrant the attitude and action of the board of education.
It is neither the province nor the right of courts to annul the plain provisions of the statute because *449 of the belief that the observance or enforcement thereof will work an inconvenience. The remedy is with the legislature. So long as in force such law is as binding upon the courts as upon an individual. No> decisions are more harmful in their ultimate effects than those wherein the courts attempt, by statutory interpretation, or rather by statutory construction,, to provide for a particular situation in a manner believed to be popularly desired, and such unwarranted usurpation of' the legislative power merits the condemnation usually accorded it after full and candid consideration and upon deliberate and mature judgment.
Writ refused.
Johnson, Bobinson and Jones, JJ., concur.