DECISION AND JUDGMENT ENTRY
{¶ 1} Wanda Jean Morris appeals a grant of summary judgment in favor of United Ohio Insurance Company on her claim for uninsured motorist coverage. Mrs. Morris contends the court erred as a matter of law when it found that R.C. 3937.18(J)(1),[1] the "owned but uninsured auto exception," and R.C. 3937.18(K)(2), the coverage definition that excludes an insured's own vehicle from its meaning of uninsured motor vehicle, can be harmonized. Because we conclude that the owned but uninsured exclusion and the definitional provision cannot be reconciled, we disagree with the trial court that each can be given effect. Thus, we conclude that only R.C. 3937.18(J)(1) can be given effect. Accordingly, only the corresponding provision on United Ohio's policy is enforceable. Mrs. Morris also contends that R.C. 3937.18(K)(2) violates the Equal Protection Clause of both the Ohio and United States Constitution. Because we found that subsection to be unenforceable, we need not address this constitutional issue. Lastly, Mrs. Morris argues that United Ohio breached its duty of good faith to her. Since we have given effect to R.C. 3937.18(J)(1) only, we must also reverse and remand the decision to grant summary judgment on Mrs. Morris' claim for breach of good faith.
 {¶ 2} Neither party disputes the following facts, which resulted in Mrs. Morris' complaint against United Ohio. In February 2000, while driving a motor home, Richard Morris, Wanda Morris' husband, rear-ended a semi tractor-trailer. Mrs. Morris was a passenger in the motor home and suffered various injuries because of the accident. At the time of this accident, United Ohio automobile insurance policy, number AP6071087, (the insurance policy) included Richard and Wanda Morris as "named insureds" and specifically listed the motor home as a "covered vehicle" in a separate "binder" for both liability and uninsured motorist coverages.
 {¶ 3} The "Liability Coverage" portion of the insurance policy provided: "A. We do not provide Liability Coverage for any insured: 1. For bodily injury or death to you or any family member." In addition, the "Uninsured Motorists and Underinsured Motorists Coverage" portion of the insurance policy provided: "C. Uninsured motor vehicle means a land motor vehicle or trailer of any type: 4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company: a. denies coverage." However, the "Uninsured Motorists and Underinsured Motorists Coverage" portion of the insurance policy also provided: "E. With regard to definition C., uninsured motor vehicle does not include any vehicle or equipment: 1. Owned by or furnished or available for the regular use of you or any family member.
 {¶ 4} Initially, Mrs. Morris attempted to recover from United Ohio under the "Liability Coverage" portion of her husband's insurance policy. However, United Ohio denied this claim under the exclusion in Section A. that provided that United Ohio would not provide liability coverage to the insured, "for bodily injury or death to you or a family member." Apparently, both parties agree that United Ohio properly denied this claim.
 {¶ 5} Following this denial, Mrs. Morris filed a claim for uninsured motorist coverage but United Ohio denied this claim as well. United Ohio concluded that the motor home could not be an uninsured motor vehicle because the coverage definition in Section E.1., which is authorized by R.C. 3937.18(K)(2), provided that an uninsured motor vehicle did not include a vehicle "owned by or furnished or available for the regular use of * * * you or any family member." Since the Morris's owned the motor home that caused the accident, the company concluded that it was not, by definition, an uninsured motor vehicle under the insurance policy.
 {¶ 6} Mrs. Morris filed a complaint in the Ross County Common Pleas Court alleging that United Ohio wrongfully denied her uninsured motorist claim. Moreover, Mrs. Morris sought a declaratory judgment that former R.C. 3937.18 was unconstitutional. After both parties filed motions for summary judgment, the court granted United Ohio's motion. Mrs. Morris assigns the following errors:[2] "FIRST ASSIGNMENT OFERROR — The trial court erred in granting defendant United Ohio Insurance Company's motion for summary judgment and by overruling plaintiff's motion for summary judgment. SECOND ASSIGNMENT OF ERROR
— The trial court erred in finding that R.C. 3937.18 allowed defendant United Ohio Insurance Company to eliminate automobile liability and uninsured motorist coverage for its named insureds who were operating and riding in a vehicle specifically insured under the policy. THIRDASSIGNMENT OF ERROR — The trial court erred by not declaring former R.C. 3937.18(K)(2) unconstitutional. FOURTH ASSIGNMENT OF ERROR — The trial court erred in granting defendant United Ohio's motion for summary judgment on plaintiff's claim of bad faith." The first and second assignments of error will be addressed together since they present similar issues. Essentially, Mrs. Morris argues that the trial court erred as a matter of law in its interpretation of R.C. 3937.18, finding that it was not ambiguous and by reconciling and giving effect to both the "owned but uninsured" exclusion of subsection (J)(1) and the coverage definition of subsection (K)(2).
 {¶ 7} We review a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241. We apply the same standard as the trial court, which is contained in Civ.R. 56. Horsley v. Essman,145 Ohio App.3d 438, 442, 2001-Ohio-2557, 763 N.E.2d 245. Under Civ.R. 56(C), summary judgment is appropriate when: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, when viewed most strongly in favor of the non-moving party, that reasonable minds can come to a conclusion only in favor of the moving party. Grafton, supra.
 {¶ 8} The material facts are not in dispute here. Rather, Mrs. Morris presents us with a question of law when she argues R.C.3937.18(J)(1) and (K)(2) are ambiguous and irreconcilable, thus rendering any policy provisions based on them unenforceable. The cardinal rule of statutory construction provides that we cannot ignore the plain and unambiguous language of a statute. Cline v. Ohio Bureau of MotorVehicles (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77. We must interpret statutes in such a manner as to carry out the legislature's intent, while keeping in mind that we must harmonize apparent inconsistencies whenever possible. Johnson's Markets, Inc. v. New Carlisle Dept. of Health (1991),58 Ohio St.3d 28, 35-36, 567 N.E.2d 1018. Moreover, we will interpret statutes in order to avoid absurd or unreasonable results. Yonkings v.Wilkinson, 86 Ohio St.3d 225, 228, 1999-Ohio-98, 714 N.E.2d 394.
 {¶ 9} Initially, we must determine which version of R.C. 3937.18
applies to this case. To make this determination, we look to the statutory law in effect when the Morris' automobile insurance coverage with United Ohio began. Ross v. Farmers Ins. Group, 82 Ohio St.3d 281,1998-Ohio-381, 695 N.E.2d 732, syllabus. R.C. 3937.31(A) mandates that, absent an agreement to the contrary, insurance companies in Ohio must guarantee automobile insurance policies against any alteration for at least two years. See, also, Wolfe v. Wolfe, 88 Ohio St.3d 246,2000-Ohio-322, 725 N.E.2d 261, paragraph one of the syllabus.
 {¶ 10} Here, both parties agree that the Morris' first entered into the insurance policy with United Ohio on February 5, 1997. Therefore, a new two-year policy period began on February 5, 1999. Since this accident occurred in February 2000, the version of R.C. 3937.18 in effect on February 5, 1999, applies to this case. It provided that insurance companies providing automobile liability coverage must also offer Ohio residents uninsured/underinsured motorist coverage. See, former R.C. 3937.18(A)(1). This version also included HB 261 amendments (adopted Sept. 3, 1997) and provided: "(J) The coverages offered under * * * [uninsured and underinsured motorist coverage] may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances: (1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided; * * * (K) As used in this section, `uninsured motor vehicle' and `underinsured motor vehicle' do not include any of the following motor vehicles: * * * (2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured; * * * *"
 {¶ 11} Mrs. Morris initially relies on State Farm Auto Ins. Co.v. Alexander (1992), 62 Ohio St.3d 397, 583 N.E.2d 309, to argue United Ohio cannot limit uninsured motorist coverage in light of the mandatory requirement of R.C. 3917.18 to offer it. Because of the ambiguity created by the legislature's adoption of HB 261, we agree with this contention.
 {¶ 12} In Alexander, the Ohio Supreme Court stated: "An automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law." Id. at syllabus. In so holding, the Alexander Court struck down a policy provision known as the "household exclusion" because it deprived the insured of coverage that R.C. 3937.18 required. The Court in Alexander
reasoned that the statute mandated uninsured coverage where: the claimant had a policy that provided uninsured coverage; the claimant was injured by an uninsured motorist; and the claim was a recognized cause of action under the Ohio tort law. In other words, Alexander held that exclusions from coverage that were not expressly authorized by the statute ran contrary to its purpose and were unenforceable. The Court subsequently applied the rationale in Alexander to strike down an "other owned vehicle" exclusion in Martin v. Midwestern Group Ins., 70 Ohio St.3d 478,1994-Ohio-407, 639 N.E.2d 438. The household exclusion of Alexander and the other owned vehicle exclusion in Martin are similar to the terms contained in United Ohio's policy and the HB 261 provisions contained in R.C. 3937.18(J)(1) and (K)(2)."
 {¶ 13} Mrs. Morris argues that Alexander is still good law because the legislature's recent amendments were not intended to supersede the Supreme Court's holding. While we disagree with that conclusion, we are forced to conclude that the amendment found at subsection (K)(2) is unenforceable because it is ambiguous and irreconcilable with subsection (J)(1). Thus, in the absence of any express statutory authorization to limit the mandatory coverage required by R.C. 3937.18(A), the limiting provision of Section E. of the uninsured motorist policy is unenforceable under Alexander and Martin.
 {¶ 14} In Alexander, State Farm attempted to "eliminate uninsured and underinsured motorist coverage" in its policies while R.C. 3937.18
did not expressly provide for any limitations on that coverage. Because R.C. 3937.18 did not authorize limitations on uninsured motorist coverage, the Court stated that State Farm's policy exclusions were unenforceable. Alexander, 62 Ohio St.3d at 400. However, between the Court's decision in Alexander and the time of Mrs. Morris's accident, the legislature amended R.C. 3937.18 twice. In each of these amendments, the legislature included language aimed at permitting insurers to limit, to some degree, uninsured and underinsured motorist coverage. Specifically, the legislature added subsections (J) and (K) to the statute in HB 261. Therefore, although the legislature did not expressly indicate an intention to supersede Alexander, it is clear that its amendments imply that intention. See, also, Clark v. Scarpelli, 91 Ohio St.3d 271, 278,2001-Ohio-39, 744 N.E.2d 719 (stating the presumption that the legislature is fully aware of any prior judicial interpretation of an existing statute when enacting an amendment). But this does not mean that United Ohio's exclusions are automatically enforceable. We still must determine whether the "owned but uninsured exclusion" of R.C. 3937.18(J)(1) and the coverage definition of subsection (K)(2) are conflicting, and if they are, whether we can reconcile them.
 {¶ 15} We start our analysis with a review of the history and purpose of uninsured motorist coverage, gleaned in large part from Widiss, Uninsured and Underinsured Motorist Insurance (2 Ed.Rev. 2000). The motoring public rapidly expanded in the post World War II era. Along with this expansion, it became apparent that a significant portion of those who were operating motor vehicles were not "financially responsible" in that they lacked either sufficient assets and/or insurance to satisfy liability claims against them. 1 Widiss 18, Section1.14. The insurance industry began marketing an "uninsured motorist endorsement" in an effort to fill the gap in protection being afforded victims of these irresponsible tortfeasors and to forestall legislative intrusion into the existing insurance market. Id. Thus, the language defining the scope of coverage provided by uninsured motorist policies was prepared by the insurance industry in response to significant pressures for changes in the accident compensation system so that accident victims would be assured a source of indemnification. However, the industry operated in the absence of a legislative definition of a comprehensive coverage that would provide a full range of protection whenever a tortfeasor was unable to access liability coverage. This left the industry free to adopt coverage terms that purported to limit or preclude coverage. Id. The ultimate result has been an endless flow of litigation by claimants and the industry in an attempt to define their respective rights and responsibilities on a piecemeal basis.
 {¶ 16} The two statutory provisions at issue here were developed by the industry as far back as 1966. However, Ohio did not adopt them until 1997. See R.C. 3937.18, as amended by 1997 HB 261, eff. Sept. 3, 1997. The other owned vehicle exclusion found at R.C. 3937.18(J)(1) first appeared as part of the 1966 Standard Form. 1 Widiss 155, Section 4.19. A similar exclusion is found in the Insurances Services Office Personal Auto Policy Form. Id. This provision was designed to prevent "stacking" by excluding coverage when the claimant is occupying a vehicle the claimant, or a spouse, or resident family member owned unless the vehicle is covered under the policy upon which the claim is made. This exclusion prevents a claimant from owning two vehicles but only insuring one and then claiming coverage on both. Under this exclusion an insured cannot claim coverage when injured in the unlisted car by invoking the mantra that uninsured motorist coverage insures people, not vehicles. Taken on it own, it is a reasonable and enforceable provision of the statute.
 {¶ 17} Likewise, the coverage definition of R.C. 3937.18(K) has its origin in the 1966 Standard Form, Part V: Additional Definitions ("uninsured highway vehicle"). 1 Widiss 453, Section 8.6. While Professor Widiss contends the definitional provision is intended to "complement" the owned but uninsured exclusion, we cannot adopt that conclusion. To us, the definitional provision seems to render the owned but uninsured exclusion superfluous, at best. At worst, it seems to be in direct conflict with a literal interpretation of that provision.
 {¶ 18} Initially, we acknowledge that the owned but uninsured exclusion of R.C. 3937.18(J)(1) is intended to limit coverage and not create it. After all, its avowed purpose is to allow policies to "preclude coverage." But, in interpreting the language actually contained in the statute (and the industry form policies for that matter) we cannot avoid the only logical conclusion one can draw from the following language: "if the motor vehicle is not specifically identified in the policy under which a claim is made." The only logical inference one can draw from that language is that the (J)(1) exclusion from coverage is limited to vehicles that the claimant owns but has not covered under the policy. If the vehicle is listed in the uninsured motorist coverage, the exclusion cannot apply by its own terms, e.g., the claimant has purchased uninsured motorist coverage for that vehicle. A claimant in that situation is not attempting to stack coverage or "get something for nothing." She is simply attempting to claim coverage for which she has paid a premium. We read (J)(1) to mean that you have no coverage for a vehicle you own unless it is listed in the policy. In that case, i.e., it is listed, it is a covered vehicle.
 {¶ 19} Then we turn to the definitional provision of R.C.3937.18(K)(2) and find that it says in essence — your vehicle can never be an uninsured motor vehicle even if you list it and pay a premium for it. The fact that (K)(2) precludes uninsured motorist coverage in an accident where the claimant, a spouse, or resident family member owns the vehicle, renders the (J)(1) promise of coverage for a listed vehicle illusory in nature. Do these provisions, when read in conjunction, mean that the consumer is purchasing uninsured motorist coverage for accidents only when they are not caused by the claimant's own vehicle? When read on its own, (K)(2) certainly seems to relay that message. But, when we add (J)(1) to the mix, we are hard pressed to glean that meaning. In short, we find that (J)(1) and (K)(2) are so ambiguous as to be unenforceable when read together. Notwithstanding our colleagues decision to the contrary in Kyle v. Buckeye Union Ins. Co., Lucas App. No. L-02-1166, 2003-Ohio-488, at ¶ 13, we cannot perceive a reasonable construction of the statute that would allow us to harmonize both subsections. Apparently, the legislature itself agrees as they have subsequently repealed (K)(2) and left (J)(1) intact. See, S.B. 267, eff. Sept. 21, 2000, which expressly repealed R.C. 3937.18(K)(2). Therefore, we look to the statute's overriding purpose of providing uninsured motorist coverage and disregard or eliminate subsection (K)(2), while giving effect to subsection (J)(1). See, Singer, Sutherland Statutory Construction (6th Ed. 2000), 385-92, Section 47:37 and State ex rel. Mitman v. Board ofCommrs. of Greene Co. (1916), 94 Ohio St. 296, 308-309, 113 N.E. 831. Having eliminated the statutory authorization for it, the definitional exclusion in the policy is unenforceable. Thus, since United Ohio relied on R.C. 3937.18(K)(2) in forming the definition found in Section E.1. of its insurance policy, Section E.1. is also unenforceable and any denial based on it was in error. Mrs. Morris' first and second assignments of error are sustained.
 {¶ 20} Due to our resolution of the first two assignments of error, we need not address the third assignment of error. See App.R. 12(A)(1)(c). However, in her fourth assignment of error, Mrs. Morris argues that if we reverse the trial court's decision regarding the reconciliation of R.C. 3937.18(J)(1) and (K)(2), we must also reverse the trial courts decision regarding her claim against United Ohio for breach of good faith. We agree because giving effect to R.C. 3937.18(J)(1) presents the trial court with a factual issue, i.e., whether United Ohio breached its duty of good faith by denying her initial claim. Therefore, Mrs. Morris' fourth assignment of error is also sustained.
JUDGMENT REVERSED AND CAUSE REMANDED.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] All references to R.C. 3937.18 are to former R.C. 3937.18 as HB 261, effective September 3, 1997 amended it, unless otherwise noted.
[2] Appellant's brief does not comply with App.R. 16(A) in that it fails to argue each assignment of error separately. Rather, appellant's brief contains a heading styled "Law and Argument," under which it lists something akin to propositions of law. These propositions are followed by an argument that does not correspond directly to the first and second assignments of error. Instead, they contain arguments that address the propositions of law rather than the assignments of error. As a result, we will address the assignments of error presented at p. iii of the brief, while attempting to address the arguments present in the "Law and Argument" section of it. But given appellant's failure to comply with the rule, we do not feel constrained to mold our opinion into the format of her brief or to respond to her arguments in the order in which she presented them.