38 So.2d 783

**TANNER et al. v. BEVERLY COUNTRY CLUB, Inc., et al.**

**ELLZEY et al. v. ORIGINAL CLUB FOREST, Inc., et al.**

Nos. 38658, 38728.

Nov. 8, 1948.

Rehearing Denied Feb. 14, 1949.

J. I. McCain, of New Orleans, for plaintiffs-appellants.

Fred A. Middleton, of New Orleans, for defendants-appellees.

O'NIELL, Chief Justice.

These cases were by consent of the parties consolidated, in this court, and were argued and submitted as one case, because each case presents for decision the same question. The question as presented by the defendants is whether section 3 of Act No. 192 of 1920, as amended, is unconstitutional.

In the case No. 38,658, Tanner et al. v. Beverly Country Club, Inc., et al., twenty individuals, alleging that each one of them was a taxpayer residing and domiciled in the Parish of Jefferson, brought this suit against the Beverly Country Club, Inc., alleging that the defendant corporation was conducting a gambling house, and hence a public nuisance as defined in Act No. 192 of 1920, on its property in the Parish of Jefferson. The plaintiffs alleged that Philip Kastel, also residing and domiciled in the Parish of Jefferson, was president of the Beverly Country Club, Inc., and was the agent for the corporation in the operation of its gambling house. Hence they made Kastel a party defendant in the suit to abate the alleged nuisance.

In the case No. 38,728, entitled Ellzey et al. v. Original Club Forest, Inc., et al., sixteen individuals, eight of whom were plaintiffs in the case of Tanner et al. v. Beverly Club, Inc., et al., brought a similar suit to abate an alleged nuisance consisting of the operation of a gambling house in the Parish of Jefferson by a corporation called Original Club Forest. In this latter suit the plaintiffs also alleged that each of them was a taxpayer residing and domiciled in the Parish of Jefferson; that one Lawrence J. Luke, also residing and domiciled in the Parish of Jefferson, was the president of the Original Club Forest, Inc., and was the agent for the corporation in the operation of its gambling house. Hence Luke was made a party defendant.

In each case the defendants filed a plea to the jurisdiction of the court ratione materiae. The plea was founded upon the omission from section 3 of the Act of 1920, originally and as amended by the act of 1940, Act No. 120 of 1940, of the words which were inserted in section 3 of the act of 1938, Act No. 49 of 1938, "having jurisdiction thereof". It was contended in the plea to the jurisdiction of the court that section 3 of the statute therefore violated the due process clause in the 14th Amendment of the Constitution of the United States and in section 2 of article 1 of the Constitution of Louisiana, and violated also the provisions in article

7 of the Constitution of Louisiana, dividing the state into a given number (originally twenty-six now twenty-eight) judicial districts, and defining the territorial jurisdiction of the district judge or judges in each judicial district.

In each case, the judge, after hearing arguments on the plea to the jurisdiction, gave judgment for the defendants, sustaining their plea to the jurisdiction of the court, declaring section 3 of Act No. 192 of 1920, as amended, unconstitutional, and dismissing the suit. The plaintiffs in each case have appealed.

It is not necessary to decide in the present cases, whether section 3 of the statute in question conflicts with the general arrangement of the judicial districts throughout the state as defined or limited in article 7 of the Constitution of Louisiana; nor is it necessary to decide here whether section 3 of the statute violates the due process clause by authorizing the filing of an abatement suit, such as these suits, in any district court which the plaintiff may select without regard for the place of residence or domicile of the defendant and without regard for the location of his place of business which the plaintiff seeks to abate as a gambling house and hence a public nuisance.

■ There are two distinct reasons why the defendants in these cases have no right to plead that section 3 of the statute in question is unconstitutional for conferring upon the plaintiff or plaintiffs in an abatement suit, such as these suits, the right to select the district court in which he will institute his suit. The first of these reasons is that the statute does not purport to give the plaintiff in an abatement suit of this kind the right to select the district court in which he will institute his suit. The second of these reasons is that the present suits were brought in the parish in which all of the defendants have their domicile, and in which the alleged gambling houses are located,—that is, in the Parish of Jefferson. It is true that, in the case of Mongogna et al. v. O'Dwyer, 204 La. 1030, 16 So.2d 829, 152 A.L.R. 162, it was said that the constitutionality of section 10 of the statute which we are now considering did not depend upon what was done under authority of that section, but depended upon what might be done under its authority. But that expression was not necessary for the decision. The case was a proceeding by mandamus to compel the district judge to grant a temporary restraining order to close the alleged gambling house, under authority of the 10th section of the statute, on a mere affidavit of the plaintiff, Mongogna, and of twelve other individuals, swearing that the defendant's establishment, known as O'Dwyer's Club Forest, was a gambling house and should be suppressed as a public nuisance under the provisions of the act. The judge of the district court refused to issue a restraining order closing the establishment, ex parte, or without giving the defendant notice and allowing him an opportunity to be heard.

The judge maintained that such a proceeding would not be due process of law, and hence would violate the 14th Amendment of the Constitution of the United States, and the corresponding provision in section 2 of article 1 of the Constitution of Louisiana. This court sustained the district judge in his refusal to grant the restraining order ex parte, and rejected the relators' petition for a writ of mandamus. In deciding the matter, in Mongogna v. O'Dwyer, the court cited the case of Coe v. Armour Fertilizer Works, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027. But the citing of that case was not appropriate in the decision rendered in Mongogna v. O'Dwyer. The decision in the Coe case did not turn upon what might have been done under authority of the statute, but what actually was done under authority of the statute. The statute, a statute of Florida, purported to authorize a seizure of the defendant's property without giving him judicial notice and an opportunity to be heard. His property was in fact seized without giving him notice or an opportunity to be heard. He pleaded that the statute and the proceedings had thereunder were violative of the due process clause in the 14th Amendment of the Constitution of the United States. The seizing creditor claimed that the defendant had *actual* notice and therefore could not complain that the statute did not require that he should have judicial notice before the levying of the seizure. What the court decided was that the alleged actual notice could not serve as a substitute for the judicial notice required by the due process clause of the 14th Amendment.

The statute in question in the present cases was enacted to carry into effect article 188 of the Constitution of 1898 and of 1913, declaring that gambling is a vice and the Legislature shall pass laws to suppress it. The same provision is retained in the Constitution of 1921 as section 8 of article 19. The statute defines gambling houses and declares them to be public nuisances; and in the third section of the act, as originally enacted, it was declared: "Section 3. Be it further enacted, etc., That any taxpayer, whether a natural or an artificial person and whether a citizen or non-resident, shall have the right to file a suit in any District Court in this State, or in the Civil District Court for the Parish of Orleans to abate the nuisance created by such gambling house and to have the owner, lessee, sub-lessee, agent or other occupant declared guilty of maintaining a public nuisance."

In 1938, by Act No. 49 of that year, the Legislature amended section 3 of Act No. 192 of 1920, by increasing the number of taxpayers, necessary to maintain an action to suppress a gambling house as a public nuisance, from one taxpayer to twenty-five taxpayers, and by requiring that they should be real estate taxpayers, and that they should have resided and voted continuously for five years in the parish wherein the nuisance was alleged to exist. In

this amendment and re-enactment of section 3, in 1938, the words "having jurisdiction thereof" were inserted, after the provision that the twenty-five taxpayers should have the right to file a suit in the district court. As amended by the act of 1938, section 3 of the act read thus: "Section 3. Twenty-five real estate taxpayers, who shall have resided and voted continuously for five years preceding in the place or parish wherein said nuisance is alleged to exist, shall have the right to file a suit in the district court, or in the civil district court for the Parish of Orleans, *having jurisdiction thereof,* to abate the nuisance created by such gambling house and to have the owner, lessee, sub-lessee, agent or other occupant declared guilty of maintaining a public nuisance." [Italics ours.]

In 1940, by Act No. 120 of the session of that year the Legislature again amended section 3 of Act No. 192 of 1920. By the amendment of 1940 the number of taxpayers, required by the act of 1938 to maintain an action to abate the nuisance, was reduced from twenty-five to ten taxpayers. In all other respects the wording of section 3, as originally enacted in 1920, was copied literally, thus: "Section 3. That 10 taxpayers, whether natural or artificial persons and whether citizens or non-residents, shall have the right to file a suit in any District Court in this State, or in the Civil District Court for the Parish of Orleans, to abate the nuisance created by such gambling house and to have the owner, lessee, sub-lessee, agent or other occu-

pant declared guilty of maintaining a public nuisance."

It is argued for the appellants that the omission of the phrase "having jurisdiction thereof", in section 3 of Act No. 120 of 1940, which phrase "having jurisdiction thereof" was inserted in the corresponding section of the act of 1938, had the effect of conferring upon every district court in the twenty-six, now twenty-eight, judicial districts throughout the state, state-wide jurisdiction to entertain a suit of this kind, against a defendant domiciled or residing anywhere in the state, to abate an alleged public nuisance, by suppressing a gambling house, located anywhere in the state. There might be some soundness in that argument if the omission of the words "having jurisdiction thereof," in the act of 1940, was the only change made in section 3 of the act of 1938. But the obvious purpose of the amendment of section 3 of the act, in 1940, was to reduce the number of taxpayers required by the act of 1938, from twenty-five to ten taxpayers, and to abolish the other requirements or qualifications for the taxpayers to maintain such a suit under section 3 of the statute. Under the original act, of 1920, any one taxpayer could maintain such a suit. By the act of 1938 the number of taxpayers necessary to maintain such a suit was increased from one taxpayer to twenty-five taxpayers, and certain qualifications for the taxpayers to maintain such a suit were required by the act of 1938. By the amendment of 1940, the num-

ber of taxpayers required to maintain the suit was reduced from twenty-five to ten, and the qualification that the plaintiffs should have resided and voted for five years in the place or parish where the nuisance was alleged to exist was abolished. The fact that these were the only objects or purposes of the amendment of 1940 is made manifest by the fact that in all other respects section 3 of the act of 1940 is an exact copy of the corresponding section of the original statute, Act No. 192 of 1920. There is no reason to believe that, by the omission of the words "having jurisdiction thereof," in the amendment of 1940, the Legislature intended to confer upon all of the district courts, in a case of this kind, state-wide jurisdiction to suppress a nuisance, regardless of the place of residence of the defendant and regardless of the place where the alleged nuisance is being conducted.

The most plausible and obvious reason why the Legislature, in the amendment of 1940, omitted the words, "having jurisdiction thereof," was that those words were deemed unnecessary. The act of 1920, which did not contain the words "having jurisdiction thereof," was in existence for eighteen years, before it was amended by the act of 1938, and we are not aware that anyone ever construed section 3 of the act as giving state-wide jurisdiction to all of the district courts throughout the state to suppress a nuisance, under the provisions of the act, regardless of the domicile or place of residence of the defendant and

regardless of the location of the alleged nuisance, or gambling house.

In this connection it is important to note that in the amendment of section 3 by the act of 1940, the Legislature tracked the wording of that section of the act of 1920 *literally*, except for the fact that section 3 of the act of 1940 requires that there shall be ten taxpayers as plaintiffs to maintain such a suit, whereas section 3 in the act of 1920 required that only one taxpayer might maintain such a suit.

In other jurisdictions throughout this country the term "any district court" has been interpreted consistently to mean "any district court having jurisdiction". On this subject we quote the late Justice Brandeis, in Robertson v. Railroad Labor Board, 268 U.S. 619, 45 S.Ct. 621, 624, 69 L.Ed. 1119, thus: "We are of opinion that by the phrase 'any District Court of the United States' Congress meant any such court 'of competent jurisdiction.' The phrase 'any court' is frequently used in the federal statutes and has been interpreted under similar circumstances as meaning 'any court of competent jurisdiction.' By the general rule the jurisdiction of a District Court in personam has been limited to the district of which the defendant is an inhabitant or in which he can be found."

In Mattler v. Schaffner, 53 Ind. 245, the Supreme Court of Indiana held that the words "any court of record" meant "any court of record having jurisdiction". In the course of its opinion the court quoted

from State ex rel. Wildman v. Board of Commissioners of Vanderburgh County, 49 Ind. 457, in answer to an argument similar to the one advanced by the defendants in the present cases, thus: "We do not think the legislature intended any such results, or to work so wide a departure from the general judicial system of the State. We must therefore seek some other than a literal interpretation of the language employed. And we think the legislature, by the phrase 'in any court of this State,' meant nothing more nor less than if they had said 'in any court of this State having competent jurisdiction.' This construction will harmonize with the general law of the State, and carry out what we are justified in concluding was the intention of the legislature."

In State v. Turnpike Company of Middletown, 65 N.J.L. 73, 46 A. 569, 570, the Supreme Court of New Jersey, interpreting a statute of that state, declared: "It is manifest that the language, 'by virtue of any process or decree of any court of this state,' cannot be held to include every court of this state, because that would give the power to justice's courts and courts of common pleas. Therefore, the words used cannot be taken in their most comprehensive sense."

Our conclusion is that the words "shall have the right to file a suit in any District Court", as used in section 3 of the act of 1920, originally and as amended by the act of 1940, means "shall have the right to file a suit in any district court

having jurisdiction". In other words the Legislature did not intend, by the amendment made in 1940, to allow the plaintiff in a suit to abate a nuisance, under the third section of the statute, to select the district court in which he would file his suit, regardless of the place of residence or domicile of the defendant or defendants, and regardless of the location of the alleged gambling house.

It is argued for the defendants that there are provisions in section 6 of the statute which confirm their view that the purpose of section 3 was to allow a plaintiff in an abatement suit brought under the provisions of the act to select the district court in which he would file his suit, regardless of the place of residence or domicile of the defendant or defendants and regardless of the location of the alleged gambling house. The provisions referred to, in section 6, are that the maintenance or operation of a nuisance, as defined in the act, by any person or persons previously enjoined under the act in any jurisdiction in the state from maintaining such a nuisance, shall be, ipso facto, contempt of court *in* the jurisdiction where such nuisance is maintained, punishable upon the mere showing of the previous injunction and the maintenance of such nuisance. Our opinion is that the phrase "in the jurisdiction where such nuisance is maintained" has reference to the jurisdiction in which the contempt is committed by a violation in that jurisdiction of any judgment, interlocutory order or decree, or injunction or

restraining order, theretofore issued by a district court in another jurisdiction in the state. In other words, the phrase "contempt of the court *in* the jurisdiction where such nuisance is maintained" does not mean contempt of the court *of* the jurisdiction, etc. It would be unreasonable to construe section 6 to mean that a violation, in another jurisdiction, of an injunction or a restraining order issued by a court having jurisdiction, should be deemed contempt of the court in the other jurisdiction, even though that court had not issued an injunction or a restraining order or any other order forbidding the defendant to operate a gambling house.

The judgment appealed from, in each of these cases, is annulled and reversed; the defendants' plea to the jurisdiction of the district court is overruled; and the cases are ordered remanded to the district court to be proceeded with in accordance with the views herein expressed. The costs incurred to this date, in each case, are to be borne by the defendants, appellees; the question of liability for court costs hereafter incurred, in each case, shall abide the final disposition of the case.

McCALEB, MOISE, and FOURNET, JJ., concur and assign reasons.

PONDER, J., concurs in decree.

FOURNET, Justice (concurring).

With all due respect to the views expressed in the majority opinion, I cannot agree that defendants were without right to attack the validity of Act No. 192 of 1920, as amended, since if such attack were successful it would render the act ineffective in its entirety. Nor can I subscribe to the construction therein placed on Section 3 of the act, particularly when this section is considered in connection with the other sections thereof and the changes that have been made by the amendments thereto. Nevertheless, I am not aware of any constitutional restriction on the legislature's right to enact such legislation, and for this reason I am concurring in the result that has been reached by the majority.

McCALEB, Justice (concurring).

Under the well-settled jurisprudence, see Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829, 152 A.L.R. 162 and State v. Baggott, 212 La. 795, 801, 33 So.2d 523, the defendants have the right to attack the validity of Act No. 192 of 1920 if that statute, as contended for by them, is wholly unconstitutional.

I am also of the opinion that a consideration of Act No. 192 of 1920 in its entirety and the amendments thereto, particularly the amendment to Section 3 by Act No. 49 of 1938 and as finally amended and re-enacted by Act No. 120 of 1940, discloses an unmistakable intention on the part of the Legislature to grant to taxpayers of the State, 10 or more in number wherever domiciled, the right to file a suit to abate a gambling nuisance, as defined in the Act,

in any district court of the State without restriction as to where the defendants reside or where the nuisance is maintained However, I cannot discern that this grant by the Legislature confers upon the district courts throughout the State any additional jurisdiction ratione materiae and is, therefore, violative of the provisions of Section 31 and 35 of Article VII of the Constitution, as claimed by defendants,[1] or, for that matter, any other constitutional provision, State or Federal.

Section 31 of Article VII of the Constitution provides that there shall be 26 judicial districts in the State, other than the Parish of Orleans, and enumerates the Parishes composing those districts. There is nothing contained therein relative to the jurisdiction of the district courts which are created.

Section 35 of the same Article, among other things, defines the jurisdiction of the district · courts, excepting the Parish of Orleans, and declares that they shall have original jurisdiction in all civil matters regardless of the amount in dispute or the fund to be distributed "and in all cases where the title to real estate, or the right to office, * * * are involved, and in all cases where no specific amount is in.

contest * * *". It further provides for unlimited and exclusive original jurisdiction in all criminal cases, except as otherwise provided, and in all probate and succession matters, etc.

The grant of jurisdiction contained in Section 35 is a statement of the subject matter over which all district courts of this state are given authority to render judgment There is nothing which I have found (from a careful reading of numerous provisions of the Constitution) limiting the power of the Legislature to provide for the place in which civil actions may be brought. Accordingly, it is plain to me that counsel for defendants, in their claim of constitutional invalidity of Section 3 of Act No 192 of 1920, have confused jurisdiction ratione persona with jurisdiction ratione materiae or "venue" with "jurisdiction". The distinction between "jurisdiction" and "venue" is firmly established and has been often recognized. In 21 C.J.S. Verbum, Courts, § 15 c, page 33, the difference is stated thus: "Jurisdiction connotes the power to decide a case on the merits, while venue connotes locality, the place where the suit should be heard. The word 'venue,' unless it is given jurisdictional effect by localizing the ac-

---

[1] Counsel for plaintiffs conceded during oral argument of this case that, if Section 3 of the Act be viewed as giving jurisdiction to any district court in the State other than that in which the nuisance exists or the defendants reside, it would be unconstitutional. We, of course, cannot be bound by this acknowledgment of counsel. It is the duty of the court to determine whether laws are violative of the Constitution. They cannot be stricken with nullity by admission of the litigants.

tion, relates only to the place where or the territory within which either party may require the case to be tried, and unless it is a localized action, the question of jurisdiction of subject matter is not involved."

In the instant case, it cannot be gainsaid that any one of the district courts of this state has jurisdiction to try a case involving the abatement of a nuisance—for, as above shown, Section 35 of Article VII of the Constitution vests in the district courts original jurisdiction in all civil matters regardless of the amount in dispute. Hence, the Legislature, in prescribing special civil remedies under Act No. 192 of 1920 for the abatement of a gambling house and authorizing a padlock penalty upon the owner of the establishment in certain instances, unquestionably had power to provide that such actions be brought in the district courts. The complaint of defendants, therefore, is not that district courts, as such, do not have jurisdiction but that the Legislature transcended its power in permitting taxpayers to bring suits of this sort in the district courts of their own choice and not necessarily in the district court of the Parish in which the defendant resides or in which the nuisance is maintained. But, in advancing this proposition, defendants are unable to point to any constitutional provision restricting the authority of the Legislature on this score. As a matter of fact, there are none as the provisions regulating the place where civil actions may be brought are not contained in the Constitution. They are to be found in the Code of Practice, Articles 162 through 168, Section 2 of Chapter 2 of Title I of Part II dealing with civil actions.[2] The general rule, Article 162, Code of Practice, is that, in civil matters, the defendant must be sued before his own judge. But that rule is subject to many exceptions and the Legislature is invested with plenary power to make such changes as it deems advisable, provided it does not violate any constitutional limitation on its authority.

The Supreme Court of the United States has many times recognized that the Congress (although clothed only with the authority given it by the Constitution) "clearly has the power to authorize a suit under a federal law to be brought in any inferior federal court" and also to provide "that the process of every District Court shall run into every part of the United States." See Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 45 S.Ct. 621, 622, 69 L.Ed. 1119, 1121; see also Toland v. Sprague, 12 Pet., U.S., 300, 328, 9 L.Ed.

---

[2] Compare the case of venue in criminal prosecutions. Section 9 of Article I of the Constitution fixes the venue of all criminal trials by providing "that all trials shall take place in the parish in which the offense was committed, unless the venue be changed; provided further, that the Legislature may provide for the venue and prosecution of offenses committed within one hundred feet of the boundary line of a parish."

1093, 1104; United States v. Union Pac. R. Co., 98 U.S. 569, 604, 25 L.Ed. 143, 151 and Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 442, 66 S.Ct. 242, 90 L.Ed 185, 190.

In United States v. Union Pac. R. Co. supra, defendant attacked a statute of 1873, 17 Stat. 509, which authorized the Attorney General to bring a suit against it "in the circuit court in any circuit" on the ground (among other things) that Congress was without constitutional power to permit the government to select its own tribunal before which it would litigate a particular case. The Supreme Court, after alluding to the general rule, recognized by Congress in the enactment of the Judicial Code, 28 U.S.C.A. that a defendant must be sued within the jurisdiction of his residence or where he is found, held that this does not mean that Congress did not have authority to legislate otherwise as there is "nothing in the Constitution which forbids Congress to enact that, as to a class of cases or a case of special character, a circuit court—any circuit court—in which the suit may be brought, shall, by process served anywhere in the United States, have the power to bring before it all the parties necessary to its decision."

For the foregoing reasons, I respectfully concur in the decree.

MOISE, Justice (concurring).

Eliminating the pursuits of all shadows reflected by constitutional restrictions and looking at the substance of this action for the purpose of determining the sole and only exception to the jurisdiction of the court in the Parish of Jefferson, we will find that the residents of Jefferson Parish brought this suit to abate a nuisance, at the domicile of the defendants, within a location in the Parish of Jefferson where the nuisance exists. Here are all of the elements to constitute the jurisdiction of that court. From the prayer of relators' petition for general and equitable relief this action is sustainable under the general injunction law of Louisiana, independent of any of the terms and provisions of Act No. 192 of 1920, as amended. For these reasons, I concur in the decree of the majority of this Court to the extent that the district court for the Parish of Jefferson has jurisdiction.