FOURNET, Chief Justice.
The above entitled and numbered causes, presenting identical issues, were consolidat *1053 ed in this court. In each case taxpayers and residents of the Parish of Jefferson, in the first listed case 26 and in the second 16, availing themselves of the provisions of Act 192 of 1920, as amended, are seeking to have the establishments located in the Parish of Jefferson, known as the Beverly Country Club in the first case and the Original Club Forest in the second, declared public nuisances and, as such, abated, and the places closed for one year; and to have the defendants, owners and operators •thereof, enjoined forever from being concerned in conducting a like public nuisance anywhere in the State of Louisiana. Each case is before us for consideration on appeal by the plaintiffs from the judgment of the lower court holding that the plaintiffs have neither a right nor a cause of action for the reason (amongst others not urged here) that Act 192 of 1920, as amended, under which these proceedings are authorized, is unconstitutional in that Section 3 of the act authorizes any 10 taxpayers to bring such a suit in any of the district courts of this state, including the Civil District Court of Orleans Parish, regardless ■of the location of the nuisance sought to be abated, thereby extending the territorial jurisdiction of the several district courts -of this state beyond their respective limits as fixed by Sections 31 and 81 of Article VII of the Constitution of 1921, and that such proceedings are in violation of the .due process clause of the Constitutions of this state and of the United States. Const. 1921, Art. 1, § 2; U.S.Const. Amend 14.
The plaintiffs are contending here, however, that this court in its judgment rendered on November 8, 1948, reported in 214 La. 791, 38 So.2d 783, reversing the judgment of the lower court maintaining the defendants’ plea to the jurisdiction of the district court, and overruling said pleas, disposed of the issue of the constitutionality of the act, and that that decision is controlling here.
While the defendants’ plea to the jurisdiction was based on their claim that the act clearly authorized any 10 taxpayers to file suit in any district court of the state, regardless of the location of the alleged nuisance, and that therefore it was unconstitutional in that it sought to extend the territorial jurisdiction of the several district courts of this state as fixed by the Constitution of 1921, a mere reference to the prevailing opinion will readily disclose plaintiffs’ error in their contention, for the court, in clear and unmistakable language, refrained from passing on this issue, stating:
“It is not necessary to decide in the present cases, whether section 3 of the statute in question conflicts with the general arrangement of the judicial districts throughout the state as defined or limited in article 7 of the Constitution of Louisiana; nor is it necessary to decide here whether section 3 of the statute violates the due process clause by authorizing the filing of an abatement suit, such as these suits, in any district court which the plaintiff may *1055 select without regard for the place of residence or domicile of the defendant and without regard for the location of his place of business which the plaintiff seeks to abate as a gambling house and hence a public nuisance.
“There are two distinct reasons why the defendants in these cases have no right to plead that section 3 of the statute in question is unconstitutional for conferring upon the plaintiff or plaintiffs in an abatement suit, such as these suits, the right to select the district court in which he will institute his suit. The first of these reasons is that the statute does not purport to give the plaintiff in an abatement suit of this kind the right to select the district court in which he will institute his suit. The second of these reasons is that the present suits were brought in the parish in which all of the defendants have their domicile, and in which the alleged gambling houses are located,- — -that is, in the Parish of Jefferson. * * * ” 214 La. at page 795, 38 So.2d at page 785.
It may be well to observe here that at the time these cases were first argued before this court, counsel for the plaintiffs conceded that if this court placed upon the statute the construction contended for by the defendants and adopted by the lower court, namely, that it authorized the filing -of an abatement suit in any district court which the plaintiff might select without regard to the residence of the defendant or -the place of business sought to be abated, that the act was unconstitutional. At that time four of the members of this court unqualifiedly entertained these views, and, accordingly, the cases having been tentatively assigned to the former Chief Justice, were taken from him and assigned to Mr. Justice McCaleb at his request. However, after giving the matter further consideration, the Justice came to the conclusion that the plea to the jurisdiction was not well founded — even though he had not changed his views concerning the construction of the statute, and despite the fact that the attorney for the plaintiffs had conceded the unconstitutionality of the act under that interpretation. It was Justice McCaleb’s opinion that there was no limitation on the legislative power to do just that; whereupon the case was handed back to the former Chief Justice for writing. His opinion, however, was concurred in by only two justices, the other four adhering to the view that the legislature, in adopting the amendment of 1940, intended to give a right to any ten taxpayers to choose their forum in any of the district courts of this state, including the Civil District Court of Orleans Parish, and to there institute suit for the abatement of such a nuisance, regardless of its location or the residence of its owners and operators. Thus it may be seen that the constitutionality of the act was not passed upon by this court when the case was-previously before us, and therefore its constitutionality vel non is before us on' this appeal.
*1057 The Legislature of 1920 (then the General Assembly), following the constitutional mandate declaring that gambling is a vice and that the legislature shall pass laws to suppress it (Section 188 of the Constitution of 1913, the same provision being retained in the Constitution of 1921, Section 8 of Article XIX) adopted its Act 192, defining, for the purpose of any action under the act, a gambling house (Section 1), which is declared to be a public nuisance, and the owner of such place, or his agent, or lessee, or sublessee, or other occupants, to be guilty of maintaining a public nuisance (Section 2) ; and giving the right to “any taxpayer, whether a natural or an artificial person and whether a citizen or non-resident, * * * to file a suit in any District Court in this State, or in the Civil District Court for the Parish of Orleans to abate the nuisance created by such gambling house and to have the owner, lessee, sub-lessee, agent or other occupant declared guilty of maintaining a public nuisance.” (Section 3.) Section 4 provides that a suit may be brought against the assessed owner when the names of the lessee, tenants, or other occupants of a gambling house are unknown — giving the right to such owner, however, to implead the real parties responsible for the maintenance of the nuisance. Section 5 provides for the manner of proceeding with the trial of the cause. Section 6 declares a violation of any judgment, interlocutory order or decree, injunction or restraining order issued, to be contempt of court, and provides further that “the maintenance, or operation, of a nuisance as defined herein by a person, or persons, previously enjoined under this Act in any jurisdiction in the state frorn maintaining such a nuisance shall be, and is hereby declared to be, ipso facto, contempt of the court in the jurisdiction where such nuisance is maintained, punishable upon the mere showing of the previous injunction and the maintenance of such nuisance.” The punishment for such contempt is set out in Section 7, providing fine and jail sentence for each offense. Section 8 creates a special lien and privilege on all the property of one found in contempt and a right to sell the same for the satisfaction of any such fine. When, the subject place is owned by a corporation, Section 9 makes the head or president of the corporation amenable to the act and its penalties as though he were the actual owner of the place; and in Section 10 the act provides: “That where a petition is filed under this act and such petition is supported by the ex parte affidavits of two reputable citizens sworn to before any officer authorized by law 'to administer oaths to affidavits, detailing matters within such affiants’ knowledge and clearly establishing the existence of a nuisance as. defined in Section 1 of this act, the court to whom such petition and affidavits is-presented shall forthwith issue a temporary injunction, to be in force until the hearing of the rule to show cause under Section S of this act; and said temporary *1059 restraining order shall prohibit the use of the place where said nuisance is averred to exist for any purpose, or purposes, whatsoever pending the trial and determination of the said rule to show cause.” (Emphasis ours.)
Sections 3 and 10 of this act were amended by the Legislatures of 1938 and 1940. In 1938, by Act 49, the legislature amended and re-enacted these sections to read as follows: “Section 3. Tvoenty-fiwe real estate taxpayers, who shall have resided and voted continuously for five years preceding in the place or parish wherein said nuisance is alleged to exist, shall have the right to file a suit in the district court, or in the civil district court for the Parish of Orleans, having jurisdiction thereof, to abate the nuisance created by such gambling house and to have the owner, lessee, •sub-lessee, agent or other occupant declared guilty of maintaining a public nui-' sanee. Section 10. In order to obtain the injunction, that the Court may find necessary upon the trial of the rule to show cause provided by Section 5 of this Act, said plaintiffs shall furnish, in solido with their surety, a bond or obligation in favor of the defendant or defendants, for such sum as the Court may determine after having examined what injury the defendants may sustain from such injunction, with the surety of one good and solvent person owning real estate and residing within the jurisdiction of the Court, to ■secure the payment of such damages and reasonable attorneys fees and costs as may be sustained and incurred by the defendants, in case it should be decided, on the suspensive or devolutive appeal, that may be taken by the defendants, that the injunction was improperly obtained, or the decree granting the same was contrary to the law and the evidence.” (Emphasis ours.)
In 1940 these same sections were amended and reenacted, by Act 120, to read as follows: “Section 3. That 10 taxpayers, whether natural or artificial persons and whether citizens or non-residents, shall Jvave the right to file a suit in any District Court in this State, or in the Civil District Court for the Parish of Orleans, to abate the nuisance created by such gambling house and to have the owner, lessee, sub-lessee, agent or other occupant declared guilty of maintaining a public nuisance. Section 10. That where a petition is filed under this act and such petition is supported by the ex parte affidavits of two reputable citizens sworn to before any officer authorized by law to administer oaths to affidavits, detailing matters within such affiants’ knowledge and clearly establishing the existence of a nuisance as defined in Section 1 of this act, the court to whom such petition and affidavits is presented shall forthwith issue a temporary restraining order, to be in force until the hearing of the rule to show cause under Section 5 of this act; and said temporary restraining order shall prohibit the use of *1061 the place where said nuisance is averred to exist for any purpose, or purposes, whatsoever pending the trial and determination of the said rule to show cause.” (Emphasis ours.)
From the foregoing it may be readily observed that the Legislature of 1938, in adopting Act 49 of that year, not only took away the right of “any taxpayer” to bring such action and authorized that such action be brought only by “twenty-five real estate taxpayers, who shall have resided and voted continuously for five years preceding in the place or parish wherein said nuisance is alleged to exist,” but also took away the right to bring such an action in “any District Court in this State” and authorized such action to be filed only “in the district court * * * having jurisdiction thereof.” It would appear, therefore, that when the Legislature of 1940 amended and re-enacted these two sections, reducing the number of taxpayers authorized to bring such action from 25 to 10, removing the qualification that they should be real estate taxpayers and the restriction that they should be resident voters in the place or parish where the nuisance is alleged to exist for a period of 'five years, and deliberately changing the requirement’ that such taxpayers “shall have the right to file a suit in the district court * * * having jurisdiction thereof” to read identically as did the act when originally adopted; that is, that 10 taxpayers “shall have the right to file a suit in any District Court in this State,” expressed in clear and unmistakable language that it did not intend to limit the plaintiffs’ right to bring such action in the place where the nuisance is alleged to exist, but rather that it intended to authorize plaintiffs to select the forum in which they would bring their suit, that is, “in any District Court in this State, or in the Civil District Court for the Parish of Orleans”.
In adopting Acts 49 of 1938 and 120 of 1940, the legislature has thus twice given us its own appreciation of the meaning of the words “shall have the right to. file a suit in any District Court in this State,” and leaving its intent with respect thereto free from doubt. That the Legislature of 1940 construed the words “shall have the right to file a suit in the district court * * * having jurisdiction thereof,” found in the 1938 amendment, as restricting the plaintiff’s right to choose their own forum is not only made evident by its action in striking out these words and substituting therefor in the 1940 act the words contained in the original act prior to its amendment in 1938, “shall have the right to file a suit in any District Court in this State,” but by the fact that in amending Section 10 of the act it removed the requirement inserted in 1938 providing that those availing themselves of the provisions of the act should furnish bond to indemnify the defendants for any injury they might sustain in case the injunction was *1063 improperly obtained, and re-inserting the identical language of Section 10 of the 1920 act making it the duty of the court to issue, without notice, a temporary restraining order upon the ex parte affidavit of two reputable citizens that the premises were used for gambling purposes; thus further facilitating and making it less burdensome on those interested in filing such an action. This section has been declared unconstitutional in that it authorized the closing of a place without a hearing, in violation of the due process clause of the constitution. See Mongogna v. O’Dwyer, 204 La. 1030, 16 So.2d 829, 152 A.L.R. 162.
We are further fortified in this view by a study and analysis of the entire act, which we' are authorized to do in construing a section thereof in order to arrive at the intention of the legislature, Thibaut v. Board of Commissioners, 153 La. 501, 96 So. 47; Bradley v. Swift & Co., 167 La. 249, 119 So. 37; Glassell, Taylor & Robinson v. John W. Harris Associates, Inc., 209 La. 957, 26 So.2d 1, for in Section 6 it is provided: “That any violation of any judgment, interlocutory order or decree, injunction or restraining order issued in a cause under this act shall constitute a contempt of court; and the maintenance, or operation, of a nuisance as defined herein by a person, or persons, previously enjoined under this Act in any jurisdiction in the state from maintaining such a nuisance shall be, and is hereby declared to be, ipso facto, contempt of the court in the jurisdiction where such nuisance is maintained, punishable upon the mere showing of the previous injunction and the maintenance of such nuisance.” Clearly, if the legislature had intended to authorize the filing of such a suit only in a court of competent jurisdiction, as contended by the plaintiffs, it would have been sufficient for Section 6 to end with the word “court,” and the hereinabove italicized portion would have been unnecessary; but it appears to us that by the italicized language the legislature intended to carry out the scheme provided for in Section 3, that is, that such an action could be brought in any district court in this state; and in order to make its mandates effective and to facilitate the punishment for violation thereof, it inserted the provisions above italicized, thereby authorizing the punishment for contempt by the court in the jurisdiction where a nuisance is maintained by one who was previously enjoined under the act "in any jurisdiction in the state * * * upon the mere showing of the previous injunction and the maintenance of such nuisance.” (Emphasis ours.)
Another section that throws further light on the subject is Paragraph 8 of Section 5, as amended by Act 75 of 1922, where it is provided: “In all proceedings under this Act compulsory process may issue out of any Court in which stick proceedings may be pending to compel the attendance of any *1065 zoitnesSj or witnesses, found residing in ■any Parish of this State.”' (Emphasis ■ours.)
While there is a canon of construction that universally obtains, that statutes are presumed to be constitutional, 16 C.J.S., Constitutional Law, § 99a, page 250, and authorities cited under note 46, and if a statute is susceptible of a construction that upholds its constitutionality, the courts in construing it should give it that construction, State ex rel. Fortier v. Capdevielle, 104 La. 561, 29 So. 215; In re Carter, 165 La. 1012, 116 So. 491; State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72; State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656; Ward v. Leche, 189 La. 113, 179 So. 52; Guillory v. Jones, 197 La. 165, 1 So.2d 65; Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547; State v. Franklin, 202 La. 439, 12 So.2d 211; In re Interstate Trust & Banking Co., 204 La. 323, 15 So.2d 369; Lewis v. State, 207 La. 194, 20 So.2d 917; Jackson v. Coxe, 208 La. 715, 23 So.2d. 312, the courts are not authorized, in order to preserve the statute against constitutional objections, to ascribe to it a meaning at variance with the plain-intention of the legislature, State ex rel. Mitman v. Board of County Commissioners of Greene County, 94 Ohio St. 296, 113 N.E. 831; Glos v. Glos, 341 Ill. 447, 173 N.E. 604, 72 A.L.R. 1328; New York Life Insurance Co. v. Burbank, 209 Iowa 199, 200, 216 N.W. 742; Yu Cong Eng v. Trinidad, 271 U.S. 500, 46 S.Ct. 619, 70 L.Ed; 1059; United States v. Reese, 92 U.S. 214, 23 L.Ed. 563; 50 Am.Jur. 212, Section 228. And a corollary is that where the legislature deliberately amends an act, changing its substance by striking out a certain provision and inserting in lieu thereof another, conveying a different meaning, the courts are not authorized to ascribe a meaning at variance with the plain import of the language, as that would be exercising legislative functions and, in effect, would be a judicial repeal. New York Life Ins. Co. v. Burbank, 209 Iowa, 199, 200, 216 N.W. 742; State ex rel. Mitman v. Board of County Commissioners of Greene County, 94 Ohio St. 296, 113 N.E. 831; State ex rel. Methodist Children’s Home Ass’n v. Board of Education, 105 Ohio St. 438, 138 N.E. 865; State ex rel. Oregon R. & Nav. Co. v. Clausen, 63 Wash. 535, 116 P. 7; State ex rel. George v. Seattle, 184 Wash. 560, 52 P.2d 360; 2 Sutherland Statutory Construction, Lewis’ 2d Ed., 893, Section 476 ; 25 R.C.L. 1047, Sections 275 and 276; 36 Cyc. 1142.
Paraphrasing the language used by the Supreme Court of Ohio in State ex rel. Mitman v. Board of County Commissioners, supra: Where, as in the instant case, the legislature deliberately amends the existing law by striking out “shall have the right to file a suit in the District Court * * * having jurisdiction thereof” and substitutes “shall have the right to file a suit in any District Court in this State,” it would be absurd for the court to deliberately give *1067 the meaning “the court having jurisdiction thereof” to the newly substituted words “any District Court in this State.” It would indeed be a mockery in the way of construction and would be equivalent to the judicial repeal of the amended act and a judicial reenactment of the former law.
This leaves for our consideration the question of whether this legislative intent, as thus plainly demonstrated, constitutes a constitutional exercise of the legislative power. In other words, does the legislature have the power to adopt an act which has the effect of. extending the territorial jurisdiction of the several district courts of this state so that the jurisdiction of each court would be co-extensive within the boundaries of the state in the trial of a particular type of case, regardless of the locality of the property, the cause of action, and the residence of the persons involved?
When the case was originally before us, Mr. Justice McCaleb and the author of this opinion shared the same view as to the construction of the statute, the author hereof stating that he was not aware of any constitutional restrictions on the right of the legislature to enact such legislation; however, upon a careful study of constitutional law followed by an analysis of the provisions of the Constitution of 1921 on the subject matter, we are brought to the conclusion that those statements are not only unsupported by any authority but that we evidently confused jurisdiction with venue. Although Mr. Justice McCaleb, in his concurring opinion, quotes from 21 C.J.S., Courts, § 15 c, page 33, as follows: “ ‘Jurisdiction connotes the power to decide a case on the merits, while venue connotes locality, the place where the suit should be heard. The word “venue,” unless it is given jurisdictional effect by localizing the action, relates only to the place where or the territory within which either party may require the case to be tried, and unless it is a localized action, the question of jurisdiction of subject matter is not involved.’” [214 La. 791, 38 So.2d 789], this should be read in connection with the observation on the same subject matter and treating of territorial jurisdiction, which is defined by the same authority in Section 20, 21 C.J.S., Cour.ts, page 35, as “ * * * the power of the tribunal considered with reference to the territory within which it is to be exercised, connotes power over property and persons within the territory, and has been distinguished from jurisdiction over the subject matter. The territorial jurisdiction of a court is a matter of substance and not of form, a limitation which is fundamental and not merely theoretical.” And, too, we must not overlook that the members of the Con-stitutional Convention, when defining certain territorial limits as to each district court, were impressed with the meaning of jurisdiction in its judicially accepted sense, as found in the Code of Practice, Article 76, as follows: “Jurisdiction means the power of him who has the right of judging, or sometimes that word means also the *1069 space or extent of country over which the judge is entitled to exercise that power”, and Article 90: “To determine on his competency (of him who has a right to judge), as relates to the place where the action is brought, we must be governed by the rule which provides that a judge shall not exercise any jurisdiction beyond the limits of the territory assigned to him.” Further, the well-settled rule is stated as follows in 21 C.J.S., Courts, § 91, page 141. “ * * * jn absence of a constitutional or statutory provision [when authorized by the Constitution] for extraterritorial jurisdiction, a court created within and for a particular territory within the state is limited in its jurisdiction to such territory.” (Brackets and emphasis ours.)
To illustrate, the Twenty-fourth Judicial District Court is composed of the parishes of Jefferson, St. John the Baptist, and St. Charles, the combined territory of which comprises the territorial jurisdiction of this district, and its judges have the power to try cases involving nuisances (strictly a local action) in any of these three parishes in which the nuisance occurs, but certainly a judge of this district cannot step beyond the territorial limits thereof into the territorial limits of an adjoining district assigned to a different judge and there try a case involving the abatement of a nuisance that arose in that location; nor would one of the judges of the Twenty-fourth Judicial District be authorized to try a case involving the abatement of a nuisance arising in St. Charles Parish in the Parish of Jefferson, or vice versa— in such a case the court would be without jurisdiction ratione materiae.
The district courts of this state, unlike those of the United States which derive their power from Congress (that body having the right from time to time to ordain and establish courts — Article 3, Section 1; Article 1, Section 8), derive their powers from the constitution of Louisiana. Under Article 7 of the Constitution of 1921, the state, exclusive of the Parish of Orleans, is divided into 25 judicial districts (since increased to 28), and the territorial limits of each is specifically fixed (Section 31), each district to be presided over by one judge or more, as the case may be (Section 32), to be elected by a plurality of the qualified voters of their respective districts in which they shall have been actual residents for two years next preceding their election, and possessing other qualifications (Section 33). These districts may be rearranged by the legislature, and by two-thirds vote of the membership of both houses the number of judges in any district may be increased (Section 34). Jurisdiction of the district courts over the subject matter of suits in respect to persons and property is delineated (Section 35). It is made the mandatory duty of the legislature to provide for the trial of recused cases in the district *1071 courts (Section 38), and for change of venue in civil and criminal cases (Section 45).
While the legislature is not expressly prohibited by the constitution to change or vary the territorial jurisdiction therein fixed, by necessary implication the conclusion is inescapable that the legislature is prohibited from doing so except in the manner provided by Section 34 of Article VII, that is, by re-arrangement of judicial districts; and it is implicit in the other provisions contained in the constitution and referred to above that the framers, in fixing the territorial limits of the various districts, intended to maintain the jurisdiction of each district court, within its boundaries, inviolate and beyond the reach of the legislature.
This conclusion is further emphasized "by the fact that the constitution contains in the same article creating these tribunals the further provisions making it the mandatory duty of the legislature to provide for the trial of cases in the district court where the judge has been recused, and also to provide a law for a change of venue in civil as well as in criminal cases, thus clearly demonstrating that a judge’s right to try a case is limited to the territorial limits of his jurisdiction unless (1) the venue has been changed to another locality, as expressly authorized by Section 45 of Article VII of the Constitution of 1921, or (2) he has been recused and a judge assigned to try the case, as provided by the legislature in Articles 337-342 of the Code of Practice under the mandate to be found in Section 38 of Article VII of that constitution.
■ As pointed out by Black in his work “Handbook of American Constitutional Law,” 4th Edition, at page 343: “A limitation upon the legislative power may be by 'direct prohibition or by implication, and in the latter case its restraints on the legislature are no less binding than when expressly prohibited. To create an implied prohibition there must be some express affirmative provision. * * * ” Or, as otherwise stated by Cooley in his Treatise on Constitutional Limitations (8th Edition), Volume 1, page 176, Note 4: “The inhibition of a Constitution may be either express or implied; that is the Constitution may expressly prohibit any specified act of the legislature, or the Constitution by its inherent terms may of necessity prohibit certain acts of a legislature by reason of the inherent conflict that would arise between the terms of the Constitution and the power claimed in favor of the legislature.” That author also quoted with approval the words of the Chief Justice in the case of People v. Draper, 15 N.Y. 532, 543: “* * * T do not mean that the power must be expressly inhibited, for there are but few positive restraints upon the legislative power contained in the instrument. * * * But the affirmative prescriptions and the *1073 general arrangements of the constitution are far more fruitful of restraints upon the legislature. Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision. The frame of the government, the grant of legislative power itself, the organization of the executive authority, the erection of the principal courts of justice, creates implied limitations upon the law-making authority as strong as though a negative was expressed in each instance.’ ” Cooley’s Constitutional Limitations, supra, page 177. See, also, 16 C.J.S., Constitutional Law, § 70 b, page 142. (Emphasis ours.)
We therefore conclude that Section 3 of Act 192 of 1920, as amended by Act 120 of 1940, is unconstitutional, and, as such, without effect; consequently, the plaintiffs are without a right or a cause of action to maintain these suits.
For the reasons assigned, the judgment in each of these cases, dismissing the suits filed by the plaintiffs, is affirmed.
McCALEB, J., dissents in part with written reasons.
HAWTHORNE and HAMITER, JJ., dissent and assign written reasons.