118 So.2d 471 (1960)
STATE of Louisiana
v.
ORLEANS PARISH SCHOOL BOARD et al.
No. 21563.
Court of Appeal of Louisiana, Orleans.
March 14, 1960.
Rehearing Denied March 21, 1960.
Certiorari Denied March 31, 1960.
*472 Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., William P. Schuler, Sp. Asst. Atty. Gen., and John E. Jackson, Jr., Special Counsel to Atty. Gen., for plaintiff and appellee.
Gerard A. Rault, New Orleans, for Orleans Parish School Board, defendant and appellee.
Louis B. Porterie, New Orleans, for Martin M. Gurtler, II, defendant and appellant.
A. P. Tureaud, New Orleans, for Oliver Bush, Sr., defendant.
Other defendants unrepresented.
McBRIDE, Judge.
This suit was brought by the Attorney General of Louisiana on behalf of the State of Louisiana, under the provisions of the self-styled "Uniform Declaratory Judgments Act," LSA-R.S. 13:4231-13:4246, for a judicial interpretation of the language of one sentence contained in Act 319 of 1956, LSA-R.S. 17:344, dealing with the classification of public schools by the Legislature of the State of Louisiana, as to whether attendance would be on a basis of only white pupils at certain schools and only Negro pupils at certain schools, or the attendance by pupils of both races at certain schools so classified by the Legislature, but, in any event, that the exclusive authority to integrate any school or schools has been reserved to the Legislature of the State of Louisiana.
Certain individuals were impleaded as defendants, they being the plaintiffs in a proceeding entitled Bush et al. v. Orleans Parish School Board, being Civil Action 3630 of the docket of the U. S. District Court for the Eastern District of Louisiana, New Orleans Division, wherein said individuals seek to have the Orleans Parish School Board enjoined from operating the public schools of New Orleans on a racially segregated basis. Along with said individuals the Orleans Parish School Board was named a defendant. In the course of the litigation, a petition of intervention was filed by Martin M. Gurtler, II, a citizen, property owner, and taxpayer of the Parish of Orleans, Louisiana, who asserted that the act in question is susceptible to but one interpretation and that is that the Legislature of the State of Louisiana reserved to itself only the right *473 to classify the public schools affected by said act as white or Negro schools, but not as mixed schools attended by pupils of both the white and the Negro races. After the filing of this intervention, the State of Louisiana amended its original petition so as to make said intervenor, Gurtler, a defendant, and he thereafter appeared in the case as a defendant.
One of the individual plaintiffs in Bush et al. v. Orleans Parish School Board, supra, filed certain exceptions which were overruled; however, said exceptor filed no further pleadings, and after the proper legal delays, preliminary defaults were entered against said exceptor as well as against all of the other individuals impleaded as defendants who are parties to Bush et al. v. Orleans Parish School Board, supra. The record does not show that there ever was a confirmation of said defaults.
The State prays for a judgment declaring that Act 319 of 1956 provides for the classification of public schools in cities wherein the act applies and grants to the Legislature of the State of Louisiana exclusive authority to integrate any school or schools in such cities.
In its answer the Orleans Parish School Board admitted the averments of the State's petition and prayed that the relief as sought by the State be granted.
The matter in due course proceeded to trial on the merits, at the termination of which judgment was rendered by the district court in favor of the State and against Orleans Parish School Board and Gurtler decreeing that Section IV of Act 319 of 1956 reserves unto the Legislature of the State of Louisiana "itself" the right to classify public schools as all white or all Negro and reserved unto itself exclusively the right to classify a public school as "mixed" or "integrated."
Gurtler, as a defendant, prosecuted an appeal to the Supreme Court of Louisiana contending that the interpretation placed on the statute by the trial judge is erroneous, and that the statute taken as a whole is clear in its import and intent to create white schools and Negro schools and not schools to be classified as "mixed" or integrated schools with both white and Negro pupils attending the same schools. The Supreme Court, being of the opinion it had no jurisdiction, exercised its discretion and transferred the appeal to this court. See La.Sup., 118 So.2d 127.
Act 319 of 1956, LSA-R.S. 17:344, the disputed portion appearing in italics supplied by us, reads as follows:
"Be it enacted by the Legislature of the State of Louisiana:
"Section I. Those public schools in any city in Louisiana with a population in excess of Three Hundred Thousand (300,000) presently being utilized in the education of children of the white race through the twelfth grade of school shall from the effective date of this statute be utilized solely and exclusively in the education of children of the white race, unless otherwise classified by the Legislature as provided in Section III and IV hereof.
"Section II. Those public schools in such cities presently being utilized in the education of children of the Negro race through the twelfth grade of school shall from the effective date of this statute be utilized solely and exclusively in the education of children of the Negro race unless otherwise classified by the Legislature as provided in Sections III and IV hereof.
"Section III. From and after the effective date of this statute, such new public schools as are erected or instituted in any city with a population in excess of Three Hundred Thousand (300,000) shall be classified as white or Negro schools by the Special School Classification Committee of the *474 Louisiana Legislature, provided for in Section IV hereof.
"Section IV. The President of the Senate shall appoint two (2) members from that body, and the Speaker of the House shall appoint two (2) members from the House of Representatives who shall serve as the Special School Classification Committee of the Louisiana Legislature, which Committee shall have the power and authority to classify any new public schools erected or instituted, or to re-classify any existing public school, in any city covered by the other provisions of this Act, so as to designate the same for the exclusive use of children of the white race or for the exclusive use of children of the Negro race. Any such classification or re-classification shall be subject to confirmation by the Legislature of Louisiana at its next regular session, said confirmation to be accomplished by concurrent resolution of the two houses of the Legislature. It is clearly understood that the Legislature of the State of Louisiana reserves to itself the sole power to classify or to change the classification of such public schools from all white to any other classification, or from all Negro to any other classification, and the action of the Special School Classification Committee as recited hereinabove shall not become final until properly ratified by the Legislature.
"Section V. Only white teachers shall teach white children in public schools; and only Negro teachers shall teach Negro children in public schools.
"Section VI. Any suit contesting any of the provisions of this Act may be brought only against the State of Louisiana with the consent of the Louisiana Legislature first obtained, as provided by the Constitution of the State of Louisiana, and no State, Parish or Municipal Board, Agent or Officer shall have any right or authority to sue or be sued or to stand in judgment on any questions affecting the validity of this Act or any of its provisions.
"Section VII. That if any one or more sections, provisions or clauses of this Act shall be held to be unconstitutional or ineffective for any reason, the remainder hereof shall remain in full force and effect.
"Section VIII. All laws or parts of laws in conflict herewith, particularly Section 321 of Title 17 of the Revised Statutes of 1950 are hereby repealed."
The constitutionality of the act under consideration is not before the court.
In construing a part of any statute, the court is authorized and should study and analyze the entire act in order to arrive at the intention of the Legislature. Tanner v. Beverly Country Club, Inc., 217 La. 1043, 47 So.2d 905; Thibaut v. Board of Commissioners, 153 La. 501, 96 So. 47; Bradley v. Swift & Co., 167 La. 249, 119 So. 37; Glassell, Taylor & Robinson v. John W. Harris Associates, Inc., 209 La. 957, 26 So.2d 1.
The meaning of the first three sections of the act is, generally, that in cities of over 300,000 population, public schools presently being utilized for the education of the children of the white race shall continue to be so used, and public schools now being utilized for the education of Negro children shall continue to be so used, unless such schools are otherwise classified by the Special School Classification Committee appointed as provided in Section IV. The third section of the act provides that newly erected schools shall be classified either as all white or all Negro schools by said classification committee.
The first part of Section IV provides for the appointment of two members of the State Senate and two members of the House of Representatives, who shall serve as the Special School Classification Committee, *475 and the Committee is endowed with power to classify newly erected public schools as white or Negro and to re-classify any existing schools from white to Negro or from Negro to white. It further provides that any such classification or reclassification by said committee must be confirmed at the next session of the Legislature by a concurrent resolution of both houses.
Up to this point there is no controversy as to the meaning of the act. It is apparent that the Legislature authorized its Special School Classification Committee to classify any new schools, or to re-classify any existing schools, only as all white or all Negro, the committee not being empowered to classify any school as being in any other category than all white or all Negro.
In the next sentence, however, it becomes clear that the Legislature reserved exclusively to itself the right to do something the Special School Classification Committee was not empowered to do and that is to change the classification of public schools from all white "to any other classification," or from all Negro "to any other classification." Note the pertinent language:
"* * * It is clearly understood that the Legislature of the State of Louisiana reserves to itself the sole power to classify or to change the classification of such public schools from all white to any other classification, or from all Negro to any other classification, and the action of the Special School Classification Committee as recited hereinabove shall not become final until properly ratified by the Legislature."
There is reason to believe the Legislature well knew that at some future time it might become desirable to establish and maintain certain public schools which could be attended by pupils of both races, and these provisions can only be interpreted as meaning that the Legislature reserved to itself the sole power to classify, without the assistance of or through the Special School Classification Committee, schools other than all white or all Negro, i. e., mixed or integrated schools.
Should we adopt the contention of appellant, Gurtler, that the intent of the act is to maintain or create all white and all Negro schools and that the words "to any other classification" as used in Section IV mean one of the two classifications previously mentioned and do not apply in the matter of "mixed" or integrated schools, then we would have to say that the Legislature indulged in redundancy and is guilty of using a surplusage of words. The method of classifying or re-classifying schools as all white or all Negro was meticulously set forth before the controverted sentence appears in the act, and it would be unreasonable to assume that by using such language the Legislature was again referring to the two classifications already fully dealt with.
It is well settled in our jurisprudence that the court must give effect to all parts of a statute, if possible, and to construe no sentence, clause, or word as meaningless or as surplusage if a construction giving force to and preserving all words can legitimately be found. St. Martin Parish Police Jury v. Iberville Parish Police Jury, 212 La. 886, 33 So.2d 671; State v. Texas Co., 205 La. 417, 17 So.2d 569; Downs v. Drew, 166 La. 439, 117 So. 454; State v. Mestayer, 144 La. 601, 80 So. 891; State v. Fontenot, 112 La. 628, 36 So. 630; Clark v. Morse, 16 La. 575; 2 Sutherland Statutory Construction (Horack's Third Edition), Section 4705, page 339.
Our conclusion is our brother below properly construed the controverted portion of the act and, therefore,
The judgment appealed from is affirmed.
Affirmed.